**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------- X

ALLSTATE INSURANCE COMPANY AND ALLSTATE PROPERTY&
CASUALTY INSURANCE COMPANY

PLAINTIFFS,

-AGAINST-

DIMITRY TVILDIANI, DEVINENI RATNAM, AIM 4 LIFE
MEDICAL DIAGNOSTICS, PC, ADVANCED MEDICAL
DIAGNOSTICS OF QUEENS, PC, SPRINGFIELD RADIOLOGY
IMAGING, PC, KISSENA MEDICAL IMAGING, PC, LAWRENCE
DIAMOND, M.D., NORADI MIKHELASHVILI, M.D., AYOOB
KHODADADI, M.D. MEDEQ INTERNATIONAL, LLC, IMAGE PRO,
LLC, IBERIA MANAGEMENT, LLC, HOLLY, INC., JOHN DOES 1
THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20,

DEFENDANTS.

------------------------------------------------------------- X

CIVIL ACTION
NO:_____

COMPLAINT

(TRIAL BY
JURY
DEMANDED)

Allstate Insurance Company and Allstate Property & Casualty Insurance Company
("Plaintiffs or "Allstate"), by their attorneys, Stern & Montana, LLP, for their Complaint against
Defendants Dimitry Tvildiani ("Tvildiani"), Devineni Ratnam ("Ratnam"), Kissena Medical
Imaging, PC ("Kissena Medical"), Aim 4 Life Medical Diagnostics, PC ("Aim 4 Life Medical"),
Advanced Medical Diagnostics of Queens, PC ("Advanced Medical"), Springfield Radiology
Imaging, PC ("Springfield Radiology"), Lawrence Diamond, M.D. ("Diamond"), Noradi
Mikhelashvili, M.D. ("Mikhelashvili"), Ayoob Khodadadi, M.D. ("Khodadadi"), Medeq
International, LLC ("Medeq Int'l"), Image Pro, LLC ("Image Pro"), Iberia Management, LLC
("Iberia Management"), Holly, Inc., John Does 1 through 20 and ABC Corporations 1 through 20
(collectively "Defendants"), allege as follows:

## PRELIMINARY STATEMENT

1.     On information and belief, Defendants Tvildiani, Ratnam and/or one or more of

John Does 1 through 20 (individually referred to by name and collectively referred to as the "Controllers") each presided over separate, but parallel and virtually identical enterprises which systematically stole millions of dollars from automobile insurance companies, including Allstate, through New York State's No-fault system via the submission of fraudulent claims for medical services submitted by Aim 4 Life Medical, Advanced Medical, Springfield Radiology and/or Kissena Medical (Aim 4 Life Medical, Advanced Medical Springfield Radiology and Kissena Medical are collectively referred to as the "Defendant PCs").

2.　　　　Each of the Defendant PCs were formed and operated in violation of Article 15 of the Business Corporation Law, Article 130 of the Education Law and the implementing regulations promulgated by the New York State Department of Financial Services concerning the eligibility requirements of healthcare providers seeking reimbursement under the No-fault Law.

3.　　　　Defendant Tvildiani, a layperson not licensed to practice any healthcare profession in the State of New York, orchestrated a scheme to defraud (the "Springfield Boulevard Scheme to Defraud") with the assistance, participation and agreement of Defendants Noradi Mikhelashvili, M.D. ("Mikhelashvili") and Ayoob Khodadadi, M.D. ("Khodadadi") through the creation of illegally owned, fraudulently incorporated and improperly licensed professional corporations ("PCs") that were used to fraudulently bill insurance companies in general, and Allstate, in particular.

4.　　　　Defendant Ratnam, a layperson not licensed to practice any healthcare profession in the State of New York, orchestrated a scheme to defraud (the "Kissena Scheme to Defraud") with the assistance, participation and agreement of Defendant Lawrence Diamond, M.D. ("Diamond") through the creation of an illegally owned, fraudulently incorporated and improperly licensed professional corporation that was used to fraudulently bill insurance

companies in general, and Allstate in particular. When not referred to individually by name, Defendants Mikhelashvili, Khodadadi and Diamond are hereinafter collectively referred to as the "Defendant Doctors."

5.     In *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 827 N.E.2d 758, 794 N.Y.S.2d 700 (2005), the New York Court of Appeals held, in part, that (1) a professional corporation not licensed in accordance with applicable New York State law is not entitled to recover benefits under the New York State No-fault Law and implementing regulations irrespective of the date of service, and (2) an insurer is entitled to recover payments made to such an entity on or after April 4, 2002, the effective date of the amended No-fault regulations.

6.     This action seeks to prevent the Defendants from continuing to illegally seek reimbursement of benefits under New York State's No-fault system through fraudulently incorporated professional corporations Aim 4 Life Medical, Advanced Medical, Springfield Radiology and Kissena Medical.

7.     On information and belief, in violation of Article 15 of New York's Business Corporation Law ("BCL") and the stringent eligibility and reimbursement requirements mandated under the New York State No-fault Law and implementing regulations, from their respective dates of incorporation, the Controllers have been the illegal owners of the Defendant PCs, which are purportedly owned on paper as professional corporations by the Defendant Doctors.

8.     By way of example and not limitation, in violation of Article 15 of the BCL, Defendant Tvildiani and/or one or more of John Does 1 through 20 purchased or otherwise was permitted to use the names and licenses of: (i) Defendant Mikhelashvili to fraudulently incorporate, own, control and/or operate Aim 4 Life Medical and Advanced Medical, which were

incorporated in 2007 and 2008 respectively; and (ii) Defendant Khodadadi to fraudulently incorporate, own, control and/or operate Springfield Radiology, which was incorporated in 2012.

9.     Aim 4 Life Medical, Advanced Medical and Springfield Radiology are each professional corporations which were used to fraudulently bill insurance companies, in general, and Allstate, in particular.

10.     On information and belief, the Springfield Boulevard Scheme to Defraud detailed herein was orchestrated by Tvildiani in or about 2005 when he created non-defendant medical professional corporation Radiology Imaging Professional PC, which he also owned and operated.

11.     On information and belief, Radiology Imaging Professional PC operated out of 68-29 Springfield Boulevard, Oakland Gardens, NY 11369, a property which Tvildiani owns, and at which at least five additional professional corporations, including non-defendants Beech Imaging & Diagnostic, PC, Springfield Medical Diagnostics, PC, and Defendants Aim 4 Life Medical, Advanced Medical and Springfield Radiology, all of which he owned, operated and controlled, also maintained their daily operations.

12.     On information and belief, although new corporate papers were filed on behalf of Aim 4 Life Medical, Advanced Medical and Springfield Radiology, they were each established to carry on the same scheme to defraud implemented by Tvildiani, and/or one or more of John Does 1 through 20, through new illegal corporate structures, as evident by the fact that virtually every aspect of their operations were identical to one another, from the office manager(s), office personnel, billing procedures, phone numbers and fax numbers, to the office space and medical equipment.

13.     At all relevant times mentioned herein, Defendant Tvildiani, and/or one or more of John Does 1 through 20, were the true owners of Aim 4 Life Medical, Advanced Medical and

Springfield Radiology.

14.     At all relevant times mentioned herein, Aim 4 Life Medical, Advanced Medical and Springfield Radiology submitted and continue to submit bills and/or seek collection for payment to No-fault insurers, in general, and Plaintiffs in particular, for medical services consisting of diagnostic testing, including, among other things, Magnetic Resonance Imaging ("MRI").

15.     At all relevant times mentioned herein, pursuant to and in purported compliance with Section 1503 of the BCL, Aim 4 Life Medical and Advanced Medical each listed Defendant Doctor Mikhelashvili as the sole shareholder, officer and director on their respective certificates of incorporation filed with the Department of State, when in fact, Mikhelashvili was merely a nominal paper owner, who, upon each PC's incorporation, abdicated any true beneficial ownership interest and control therein to Defendant Tvildiani, who is not licensed to practice any healthcare related profession in the State of New York.

16.     Likewise, at all relevant times mentioned herein, pursuant to and in purported compliance with Section 1503 of the BCL, Springfield Radiology listed Defendant Doctor Khodadadi as the sole shareholder, officer and director on its certificate of incorporation filed with the Department of State, when in fact, he was merely a nominal paper owner, who, upon Springfield Radiology's incorporation, abdicated any true beneficial ownership interest and control therein to Defendant Tvildiani, who is not licensed to practice any healthcare related profession in the State of New York.

17.     Similarly, in violation of Article 15 of New York's Business Corporation Law ("BCL") and the stringent eligibility and reimbursement requirements mandated under the New York State No-fault Law and implementing regulations, from its respective date of incorporation

in 2002, Defendant Ratnam, and/or one or more of John Does 1 through 20, has been the unlawful owner of Kissena Medical, which is purportedly owned on paper as a professional corporation by Defendant Doctor Diamond.

18.     At all relevant times mentioned herein, Defendant Ratnam, and/or one or more of John Does 1 through 20, was the true owner of Kissena Medical which submitted, and continues to submit bills and/or seek collection for payment to No-fault insurers, in general, and Allstate in particular, for medical services consisting of diagnostic testing, including, among other things, MRIs.

19.     At all relevant times mentioned herein, pursuant to and in purported compliance with, Section 1503 of the BCL, Kissena Medical listed Defendant Diamond as its owner, sole shareholder, officer and director on its certificate of incorporation filed with the Department of State, when in fact, he was a nominal paper owner, who abdicated any true beneficial ownership interest therein and control to Defendant Ratnam, who is not licensed to practice any healthcare related profession in the State of New York.

20.     Reflective of the fact that the Defendant Doctors' interest in the Defendant PCs existed only on paper, they are interchangeably referred to herein as "Paper Owners."

21.     Under the fraudulent schemes described herein, the Defendant PCs bill for professional services provided to patients in violation of Article 15 of the BCL, which governs the corporate practice of medicine in New York State and requires any corporation that provides medical services to do so as a professional corporation owned and controlled exclusively by licensed physicians. The practice of medicine by one who is not a physician, as well as the sale of a medical license by a physician, are felonies pursuant to New York Education Law § 6512.

22.     On information and belief, in violation of Article 15 of the BCL, at the time the

Defendant PCs were incorporated in the State of New York, the Defendant Doctors abdicated and were divested of any and all attributes of true ownership and control, which were then diverted by the Controllers, and others unknown to Plaintiffs, to management companies in which the respective Controllers also maintained a similar ownership and financial interest.

23.     By way of example and not limitation, at the time Aim 4 Life Medical and Advanced Medical were incorporated using Mikhelashvili's name, he was divested of any and all attributes of true ownership and control of the PCs by Tvildiani, and others unknown to Plaintiffs, which was diverted to Medeq Int'l, Image Pro and/or Iberia Management, in which Tvildiani, and others unknown to Plaintiffs, also maintained a similar ownership and financial interest.

24.     Similarly, at the time Springfield Radiology was incorporated using Khodadadi's name, he was divested of any and all attributes of true ownership and control of the PCs by Tvildiani, and others unknown to Plaintiffs, which was diverted to Medeq Int'l, Image Pro and/or Iberia Management, in which Tvildiani, and others unknown to Plaintiffs, also maintained a similar ownership and financial interest.

25.     By way of further example and not limitation, at the time Kissena Medical was incorporated using Diamond's name, he was divested of any and all attributes of true ownership by Ratnam, and others unknown to Plaintiffs, which was then diverted to Holly, Inc. in which Ratnam, and others unknown to Plaintiffs, also maintained a similar ownership and financial interest. Medeq Int'l, Image Pro, Iberia Management, and Holly Inc. are referred to collectively herein as the "Defendant Management Companies."

26.     On information and belief, the Controllers and the Defendant Management Companies submitted claims through their respective Defendant PCs for diagnostic testing

purportedly rendered to persons who allegedly sustained injuries covered under the No-fault Law. Under that law, policyholders and others who sustain injuries in automobile accidents can obtain payments from the policyholders' automobile insurance companies for necessary medical care, including treatments, tests and medical equipment ordered by the patients' physicians.

27.    Under the No-fault Law, patients can only assign those benefits directly to doctors and other licensed healthcare providers, enabling them to bill insurance companies directly for their services. Defendants exploited the No-fault system by obtaining such assignments and billing insurers for diagnostic services rendered by fraudulently incorporated professional corporations in violation of the No-fault Law.

28.    On information and belief, at all relevant times mentioned herein, Defendant Tvildiani owned and controlled Medeq Int'l, Image Pro and Iberia Management, which operated out of 68-29 Springfield Boulevard, Oakland Gardens, NY 11369, the address they shared with Aim 4 Life Medical, Advanced Medical and Springfield Radiology.

29.    On information and belief, at all relevant times mentioned herein, Defendant Ratnam owned and controlled Holly, Inc. which operated out of 140-15 Holly Avenue, Flushing, NY 11335, the address it shared with Kissena Medical.

30.    At all relevant times mentioned herein, the Defendant Management Companies entered into agreements with the Defendant PCs to ostensibly provide management and administrative services, office space, and medical and office equipment and/or other supplies, as well as billing and collection services. In fact, these purported agreements were used to engage in unlawful fee-splitting and funnel millions of dollars in fraudulently obtained insurance payments to the Controllers through the Defendant Management Companies.

31.    The Controllers have presided over schemes intended to circumvent, and in fact,

violate Article 15 of the BCL and its proscription against the corporate practice of medicine, as well as Article 130 of the Education Law.

32.     By using the name and license of the Defendant Doctors to fraudulently incorporate, own, operate and control the Defendant PCs, the Controllers, together with the other Defendants, held out the Defendant PCs to be legitimate professional corporations in compliance with core licensing requirements when, in fact, they were not. In doing so, the Controllers perpetrated a fraud upon the public and Allstate, among others.

33.     By allowing their name and license to be used to fraudulently incorporate and/or vest ownership, control and operation of the Defendant PCs in the Controllers, the Defendant Doctors held out the Defendant PCs to be legitimate professional corporations in compliance with core licensing requirements when, in fact, they were not. In doing so, the Defendant Doctors, together with the other Defendants, perpetrated a fraud upon the public, and Allstate, among others.

34.     In contravention of the strong public policy concerns of the New York State Legislature in regulating the licensing of, and limiting the practice of medicine to, qualified professionals, the Controllers have circumvented the laws of the State and imperiled the welfare of the public by engaging in the wholesale purchase and misuse of the Defendant Doctors' medical licenses.

35.     On information and belief, Defendants repeatedly violated the laws established by the State of New York to protect the public from the unlicensed practice of medicine for the purpose of converting money, in disregard of its impact on the premium-paying public.

36.     The No-fault Law is a statutory creation, in derogation of the common law, and must be strictly construed. This lawsuit seeks to, among other things, enforce the plain language

of the No-fault Law and the implementing regulations, as well as its underlying public policy, which limits reimbursement of No-fault benefits to properly licensed professional corporations. In doing so, Plaintiffs seek compensatory damages and declaratory judgments that Plaintiffs are not required to pay any No-fault claims from the Defendant PCs that seek reimbursement for any medical services: (1) due to the Defendant PCs' fraudulent incorporation and/or control/ownership by non-physicians; and (2) as a result from unlawful fee-splitting activities.

37.     Such claims continue to be submitted by and/or in the name of the Defendant PCs and are, or can be, the subject of No-fault collection actions and/or arbitrations to recover benefits, and thus constitute a continuing harm to Plaintiffs.

38.     By way of example and not limitation, annexed hereto as Exhibit "A" is a list of the No-fault claims that Plaintiffs paid to Defendants, to which they are not entitled, because of their fraudulent corporate structure. By way of further example and not limitation, annexed hereto as Exhibit "B" is a non-exhaustive list of the No-fault claims that form the basis of Plaintiffs' request for declaratory relief.  Said spreadsheets are grouped by claim number, PC, date of service and the amount billed.

<u>**NATURE OF THE ACTION**</u>

39.     This action is brought pursuant to:

   i)    The United States Racketeer Influenced and Corrupt Organizations Act ("RICO"); 18 U.S.C. §§ 1961, 1962(c) and 1964(c);

   ii)   New York State common law; and

   iii)  Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

<u>**NATURE OF RELIEF SOUGHT**</u>

40.     Allstate  Insurance  Company  and  Allstate  Property  &  Casualty  Insurance

Company seek treble damages that they sustained as a result of the Defendants' schemes and artifices to defraud, and acts of mail fraud (pursuant to 18 U.S.C. § 1341), in connection with their use of the facilities of the No-fault system and its assignment of benefits mechanism to fraudulently obtain payments from Plaintiffs for medical services they allegedly rendered to individuals covered by Plaintiffs under New York State's No-fault Law.

41.     Plaintiffs seek compensatory damages to recover all payments made to the Defendant PCs since their respective dates of incorporation and punitive damages that they sustained as a result of Defendants' fraudulently obtaining payments from Plaintiffs for purported medical services rendered by fraudulently incorporated professional corporations to individuals covered by Plaintiffs under New York State's No-fault Law.

42.     Plaintiffs also seek compensatory and punitive damages to recover all payments made to the Defendant PCs as a result of unlawful fee-splitting.

43.     Plaintiffs further seek recovery of the No-fault claim payments made under the independent theory of unjust enrichment.

44.     Plaintiffs also seek a Judgment declaring that:

a.     Plaintiffs are under no obligation to pay any of Kissena Medical Imaging, PC, Advanced Medical Diagnostics, PC and Springfield Radiology Imaging, PC's No-fault claims due to their fraudulent corporate structure;

b.     Kissena Medical Imaging, PC, Advanced Medical Diagnostics, PC and Springfield Radiology Imaging, PC never had, and do not now have, standing to prosecute any claim for first-party No-fault benefits as an assignee of Covered Persons in any arbitration proceeding or lawsuit commenced in state or federal court due to their fraudulent corporate structure; and

c.     Plaintiffs are under no obligation to pay any of Kissena Medical Imaging, PC, Advanced Medical Diagnostics, PC and Springfield Radiology Imaging, PC's No-fault claims due to Kissena Medical Imaging, PC, Advanced Medical Diagnostics, PC and Springfield Radiology Imaging, PCs' unlawful fee-splitting.

45.     As a result of Defendants' actions alleged below, Plaintiffs were defrauded of an amount in excess of $5,700,000.00, the exact amount to be determined at trial, in payments which Defendants received from Plaintiffs for purported medical services provided by fraudulently incorporated professional corporations.

## THE PARTIES

**A.     Plaintiffs**

46.     Plaintiff Allstate Insurance Company is duly organized and existing under the laws of the State of Illinois; licensed to engage in the writing of automobile insurance policies in the State of New York; and provides automobile insurance coverage to its policyholders under and in accordance with New York State Law.

47.     Plaintiff Allstate Property & Casualty Insurance Company is duly organized and existing under the laws of the State of Illinois; licensed to engage in the writing of automobile insurance policies in the State of New York; and provides automobile insurance coverage to its policyholders under and in accordance with New York State Law.

**B.     The Defendant Controllers**

48.     On information and belief, Defendant Dimitry Tvildiani is a natural person residing in the State of New York, who owned, controlled and operated, and is an undisclosed principal and owner of Aim 4 Life Medical, Advanced Medical and Springfield Radiology.

49.     On information and belief, at all times mentioned herein, Defendant Tvildiani was the mastermind of an elaborate scheme to defraud Plaintiffs, and in furtherance thereof, entered into agreements on behalf of Medeq Int'l, Image Pro and Iberia Management to engage in unlawful fee-splitting and ensure that the profits from Aim 4 Life Medical, Advanced Medical and Springfield Radiology were funneled to him; solicited Defendants Mikhelashvili and

Khodadadi to form their respective PCs in violation of the New York Business Corporation Law; and operated, controlled and was the true beneficial owner of Aim 4 Life Medical, Advanced Medical and Springfield Radiology.

50.     On information and belief, at all relevant times herein, Defendant Tvildiani owned, operated and controlled Medeq Int'l, Image Pro and Iberia Management.

51.     On information and belief, Defendant Tvildiani is also the true owner of Aim 4 Life Medical, Advanced Medical and Springfield Radiology and/or maintains a controlling financial interest therein.

52.     On information and belief, Defendant Devineni Ratnam is a natural person residing in the State of New York, who owned, controlled and operated, and is an undisclosed principal and owner of Kissena Medical.

53.     On information and belief, at all times mentioned herein, Defendant Ratnam, and/or one or more of John Does 1 through 20, was the mastermind of an elaborate scheme to defraud Allstate, and in furtherance thereof, entered into agreements on behalf of Holly, Inc. to engage in unlawful fee-splitting and ensure that the profits from Kissena Medical were funneled to him; solicited Defendant Diamond to form Kissena Medical in violation of the New York Business Corporation Law; and operated, controlled and was one of the true beneficial owners of Kissena Medical.

54.     On information and belief, at all relevant times herein, Defendant Ratnam owned, operated and controlled Holly, Inc.

55.     On information and belief, Defendant Ratnam is also the true owner of Kissena Medical and/or maintains a controlling financial interest therein.

## C.   **Defendant Doctors**

56.     Defendant Lawrence Diamond is a natural person residing in the State of New York and has practiced medicine in the State of New York under license number 155486, issued by the New York State Education Department on or about August 22, 1983. Defendant Diamond is listed with the Departments of State and Education as the sole owner of Kissena Medical, and, on information and belief, is the owner on paper of that professional corporation.

57.     On information and belief, to facilitate the fraudulent incorporation and/or illegal corporate structure of Kissena Medical, as well as unlawful fee-splitting, Defendant Diamond sold his name and/or the use of his license for a fee and/or other compensation to Defendant Ratnam and provided the essential means for Defendant Ratnam to fraudulently incorporate and/or operate Kissena Medical and/or bill for purported medical services through Kissena Medical in violation of applicable New York State law.

58.     Defendant Ayoob Khodadadi is a natural person residing in the State of New York and has practiced medicine in the State of New York under license number 113253, issued by the New York State Education Department on or about August 21, 1972. Defendant Khodadadi is listed with the Departments of State and Education as the sole owner of Springfield Radiology, and, on information and belief, is the owner on paper of that professional corporation.

59.     On information and belief, to facilitate the fraudulent incorporation and/or illegal corporate structure of Springfield Radiology, as well as unlawful fee-splitting, Defendant Khodadadi sold his name and/or the use of his license for a fee and/or other compensation to Defendant Tvildiani, and provided the essential means for Defendant Tvildiani to fraudulently incorporate and/or operate Springfield Radiology and/or bill for purported medical services through Springfield Radiology in violation of applicable New York State law.

60.     Defendant Noradi Mikhelashvili is a natural person residing in the State of New York and has practiced medicine in the State of New York under license number 241064, issued by the New York State Education Department on or about July 14, 2006. Defendant Mikhelashvili is listed with the Departments of State and Education as the sole owner of Aim 4 Life Medical and Advanced Medical, and, on information and belief, is the owner on paper of those professional corporations.

61.     On information and belief, to facilitate the fraudulent incorporation and/or illegal corporate structure of Aim 4 Life Medical and Advanced Medical, as well as unlawful fee-splitting, Defendant Mikhelashvili sold his name and/or the use of his license for a fee and/or other compensation to Defendant Tvildiani and provided the essential means for Defendant Tvildiani to fraudulently incorporate and/or operate Aim 4 Life Medical and Advanced Medical and/or bill for purported medical services through those PCs in violation of applicable New York State law.

**D.**     **The Defendant PCs**

62.     Defendant Kissena Medical was incorporated on or about July 2, 2002, and is a professional corporation authorized to do business in the State of New York with its principal place of business located in Queens, New York. Defendant Diamond is the nominal Paper Owner of Kissena Medical, and, on information and belief, received an agreed upon salary and/or other compensation for doing so from Defendant Ratnam and/or one or more of John Does 1 through 20, in exchange for allowing his name and license to be used on corporate filings made with the New York State Departments of State and Education on behalf of Kissena Medical.

63.     On information and belief, at all relevant times mentioned herein, Defendant Ratnam and/or one or more of John Does 1 through 20 were the true beneficial owners of

Kissena Medical, and operated, managed and/or controlled the PC.

64. Defendant Aim 4 Life Medical was incorporated or about June 19, 2007, and is a professional corporation authorized to do business in the State of New York with its principal place of business located in Queens, New York. Defendant Mikhelashvili is the nominal Paper Owner of Aim 4 Life Medical, and, on information and belief, received an agreed upon salary and/or other compensation for doing so from Defendant Tvildiani, and/or one or more of John Does 1 through 20, in exchange for allowing his name and license to be used on corporate filings made with the New York State Departments of State and Education on behalf of Aim 4 Life Medical.

65. On information and belief, at all relevant times mentioned herein, Defendant Tvildiani, and/or one or more of John Does 1 through 20, were the true beneficial owners of Aim 4 Life Medical, and operated, managed and/or controlled the PC.

66. Defendant Advanced Medical was incorporated on or about March 24, 2008, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located in Queens, New York. Defendant Mikhelashvili is the nominal Paper Owner of Advanced Medical, and, on information and belief, received an agreed upon salary and/or other compensation for doing so from Defendant Tvildiani, and/or one or more of John Does 1 through 20, in exchange for allowing his name and license to be used on corporate filings made with the New York State Departments of State and Education on behalf of Advanced Medical.

67. On information and belief, at all relevant times mentioned herein, Defendant Tvildiani, and/or one or more of John Does 1 through 20, were the true beneficial owners of Advanced Medical, and operated, managed and/or controlled the PC.

68.     Defendant Springfield Radiology was incorporated on or about May 31, 2012, and is a professional corporation authorized to do business in the State of New York, with its principal place of business located in Queens, New York. Defendant Khodadadi is the nominal Paper Owner of Springfield Radiology, and, on information and belief, received an agreed upon salary and/or other compensation for doing so from Defendant Tvildiani, and/or one or more of John Does 1 through 20 in exchange for allowing his name and license to be used on corporate filings made with the New York State Departments of State and Education on behalf of Springfield Radiology.

69.     On information and belief, at all relevant times mentioned herein, Defendant Tvildiani, and/or one or more of John Does 1 through 20, were the true beneficial owners of Springfield Radiology, and operated, managed and/or controlled the PC.

**E.      Defendant Management Companies**

70.     On information and belief, Image Pro was incorporated on or about August 11, 2000, and is a corporation authorized to do business in the State of New York, with its principal place of business located in Queens, New York.

71.     On information and belief, Defendant Image Pro is owned, operated and controlled by Defendant Tvildiani and/or one or more of John Does 1 through 20.

72.     On information and belief, Image Pro was used to control, operate and funnel money from Aim 4 Life Medical, Advanced Medical and/or Springfield Radiology to Defendant Tvildiani and/or one or more of John Does 1 through 20, and to engage in unlawful fee-splitting.

73.     On information and belief, Medeq Int'l was incorporated on or about December 22, 2004, and is a corporation authorized to do business in the State of New York, with its principal place of business located in Queens, New York.

74.    On information and belief, Defendant Medeq Int'l is owned, operated and controlled by Defendant Tvildiani and/or one or more of John Does 1 through 20.

75.    On information and belief, Medeq Int'l was used to control, operate and funnel money from Aim 4 Life Medical, Advanced Medical and/or Springfield Radiology to Defendant Tvildiani and/or one or more of John Does 1 through 20, and to engage in unlawful fee-splitting.

76.    On information and belief, Iberia Management was incorporated on or about June 29, 2005, and is a corporation authorized to do business in the State of New York, with its principal place of business located in Queens, New York.

77.    On information and belief, Defendant Iberia Management is owned, operated and controlled by Defendant Tvildiani and/or one or more of John Does 1 through 20.

78.    On information and belief, Iberia Management was used to control, operate and funnel money from Aim 4 Life Medical, Advanced Medical and/or Springfield Radiology to Defendant Tvildiani and/or one or more of John Does 1 through 20, and to engage in unlawful fee-splitting.

79.    On information and belief, Holly, Inc. was incorporated on or about October 16, 1992, and is a corporation authorized to do business in the State of New York, with its principal place of business located in Queens, New York.

80.    On information and belief, Holly, Inc. is owned, operated and controlled by Defendant Ratnam and/or one or more of John Does 1 through 20.

81.    On information and belief, Holly, Inc. was used to control, operate and funnel money from Kissena Medical to Defendant Ratnam and/or one or more of John Does 1 through 20, and to engage in unlawful fee-splitting.

**F.**    **The John Doe Defendants**

82.    Defendants John Does 1 through 20 (collectively referred to as "John Does") are individuals who conspired, participated, conducted and assisted in the fraudulent and unlawful conduct alleged herein. These individuals will be added as defendants when their names and the extent of their participation become known through discovery.

**G.**    **The ABC Corporations**

83.    Defendants ABC Corporations 1 through 20 are additional companies that are unknown to Plaintiffs, and are owned, controlled and operated by one or more of the Controllers and/or others unknown to Plaintiffs, and which entered into ostensible agreements and other contracts with the Defendant PCs and were used to funnel money to one or more of the Controllers.

84.    On information and belief, the ABC Corporations also are the alter egos of one or more of the Controllers and their associates and conspired and assisted in the fraudulent and unlawful conduct alleged herein. These corporations will be added as defendants when their names and the extent of their participation become known through discovery.

## JURISDICTION AND VENUE

85.    The jurisdiction of the Court arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*; 28 U.S.C. §§ 1331; and principles of pendent jurisdiction.

86.    Additionally, this Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(l) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

87.     The Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367(a) and under the Declaratory Judgment Act, 28 U.S.C. § 2201 and § 2202.

88.     Venue lies in this district court under the provisions of 28 U.S.C. § 1391, as the Eastern District of New York is the district where one or more of the defendants reside and because this is the district where a substantial amount of the activities forming the basis of the Complaint occurred.

## FACTUAL BACKGROUND AND ALLEGATIONS
## APPLICABLE TO ALL CAUSES OF ACTION

89.     Plaintiffs underwrite automobile insurance in New York State and participate as insurers in New York State's No-fault program.

90.     Under the Comprehensive Motor Vehicle Insurance Reparations Act of New York State, Ins. Law (popularly known as the "No-fault Law") §§ 5101, *et seq.*, Plaintiffs are required to pay, *inter alia*, for health service expenses that are reasonably incurred as a result of injuries suffered by occupants of their insured motor vehicles and pedestrians ("Covered Persons") that arise from the use or operation of such motor vehicles in the State of New York.

91.     On information and belief, each of the Defendant PCs is ostensibly a healthcare provider that bills for diagnostic services to, among others, individuals covered under the No-fault Law.  In exchange for their services, the Defendant PCs accept assignments of benefits from their patients covered under the No-fault Law (the "Covered Persons" or "Claimants") and submit claims for payment to No-fault insurance carriers, in general, and to Plaintiffs, in particular.

92.     Under the No-fault Law and implementing regulations, a provider of healthcare services is not eligible for reimbursement under Section 5102(a)(1) of the Insurance Law if the

provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York or meet any applicable licensing requirement necessary to perform such service in any other state in which such service is performed.

**A.**   **Control / Ownership of Professional Corporations**

93.     Pursuant to Section 1504(a) of the New York State Business Corporation Law and regulations promulgated by the New York State Department of Health, professional service corporations may only render professional services through individuals authorized by law to render such professional services.

94.     Section 1504(c) of the Business Corporation Law of the State of New York requires, among other things, that:

> Each report, diagnosis, prognosis, and prescription made or issued by a corporation practicing medicine, ... physiotherapy or chiropractic shall bear the signature of one or more physicians, ... physiotherapists, or chiropractors, respectively, who are in responsible charge of such report, diagnosis, prognosis, or prescription.

95.     Section 1507 of the Business Corporation Law of the State of New York prohibits a shareholder of a professional service corporation from issuing shares, entering into an agreement, granting proxies or transferring control to individuals who are not authorized by law to practice the profession for which the professional corporation is authorized to practice and provides that "[A]ll shares issued, agreements made or proxies granted in violation of this section [1507] are void."

96.     Similarly, under section 1508 of the Business Corporation Law of the State of New York, no individual may be a director or officer of a professional service corporation unless that individual is authorized by law to practice in the same profession that the corporation is authorized to practice.

21

97.     Section 1503(b) of the Business Corporation Law of the State of New York requires that the certificates of incorporation for an entity seeking to practice as a professional service corporation state the profession to be practiced by such corporation and the names and resident addresses of all individuals who are to be the original shareholders, directors and officers of such corporation.

98.     The restrictions contained in Article 15 of the B.C.L. were meant to "ensure that a professional service corporation renders professional services only through qualified members of the professions and are *in fact controlled only by qualified members*."  New York Legislative Annual 1970, p. 129 (emphasis added). Restrictions in B.C.L. § 1507 in particular were designed to "insure that a professional service corporation [such as the Defendant PCs here] *could not be controlled by a layperson*". *See* New York State Legislative Annual 1971, p. 130 (emphasis added). These are not mere technical requirements, but are part of an important and long-established regulatory scheme specifically designed by the Legislature to protect patients' health and safety and to insure the ethical and competent practice of the profession of medicine. *See People v. Cole*, 219 N.Y. 98 (1916) (purpose of licensing provisions governing practice of medicine is to protect the public). Indeed, Section 6512 of the Education Law makes it a Class E felony to "fraudulently sell...any...license...purporting to authorize the practice of a profession." Moreover, the New York State Department of Health has determined that violating these important provisions constitutes "professional misconduct" that can result in the revocation of a physician's medical license. Moreover, the statutory scheme "prohibits a licensed physician from allowing a non-licensed person to form a service corporation, to be a shareholder of a professional service corporation, *or to control a professional service corporation*." *See* 9/5/00 DOH Opinion (emphasis added).

99.     The implementing No-fault regulation promulgated by the Superintendent of Financial Services (f/k/a the Superintendent of Insurance), 11 NYCRR § 65-3.16(a)(12) states, in relevant part, that "a provider of health care services is not eligible for reimbursement under section 5102(a)(l) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York."

## C.   Fee-Splitting with Non-Professionals

100.    Pursuant to Sections 6509-a, 6530 and 6531 of the Education Law, neither a professional corporation nor its record owner may permit any person to share in fees other than a partner, employee, associate in a professional firm or corporation, professional subcontractor or consultant authorized to practice medicine, or a legally authorized trainee practicing under the supervision of a licensee.

101.    Under Section 6530(19) of the Education Law, the prohibition against the sharing of fees also applies to any arrangement or agreement with non-physicians involving the furnishing of space, equipment and/or services to the medical professional corporation.

102.    Under Section 6530 of the Education Law and N.Y. Pub. Health Law § 230-a, fee splitting practices constitute professional misconduct and subject a physician to serious penalties, including sanctions against a physician's medical license. New York's Business Corporation Law 1503(d) applies the Education Law's professional misconduct provisions to professional services corporations, which may have their certificates of incorporation suspended, revoked or annulled "for cause, in the same manner and to the same extent as is provided with respect to individuals and their licenses, certificates and registrations."

103.    Under 11 N.Y.C.R.R. § 65-3.16(a)(l2), a physician or professional incorporation engaged in fee-splitting is ineligible for reimbursement because such conduct constitutes a

violation of a core licensing requirement.

**D.**    **Backdrop and the Defendant PCs' Submission of Fraudulent Bills**

104.    In purported compliance with the No-fault Law and 11 NYCRR 65 *et seq.*, the Defendant PCs submitted proof of their claims to Plaintiffs, using the claim form prescribed by the New York State Department of Financial Services (known as a "Verification of Treatment by Attending Physician or Other Provider of Health Service" or "NYS form NF-3"), or a substantially similar form.

105.    Pursuant to Section 403 of the New York State Insurance Law, the claim forms (NF-3s) submitted to Plaintiffs by the Defendant PCs contained the following warning at the foot of the page:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

106.    To process and verify claims submitted by the Defendant PCs, Plaintiffs required, and the Defendant PCs submitted, to the extent applicable, narrative reports and other medical records relative to the alleged medical care and treatment rendered to Covered Persons, for which the Defendant PCs were seeking payment from Plaintiffs.

107.    Pursuant to the No-fault Law and implementing regulations, as well as the applicable policies of insurance, Plaintiffs are generally required to process claims for which a PC has standing to submit, within 30 days of receipt of proof of claim.

108.    To fulfill their obligation to promptly process claims, Plaintiffs justifiably relied upon the bills and documentation submitted by Defendants in support of their claims, and have paid Defendants based on the representations and information that Defendants mailed to

Plaintiffs.

109.    The Controllers are laypersons, not licensed to practice any profession in the State of New York, who purchased and/or otherwise were permitted to use the name and license of the Defendant Doctors to fraudulently incorporate and/or otherwise own, control and operate the Defendant PCs in violation of applicable New York State law, including Article 15 of the BCL, which prohibits layperson ownership of a professional corporation, and Article 130 of the Education law, which prohibits fee-splitting. By doing so, the Controllers concealed that they are the "true owners" of the Defendant PCs as set forth herein, and the Defendants fraudulently represented that the Defendant PCs are legitimate professional corporations in compliance with core licensing requirements, when, in fact, they are not.

110.    On information and belief, the Controllers created and/or used the Defendant PCs which they controlled, and which were ostensibly owned by the Defendant Doctors, to bill No-fault insurance carriers for diagnostic services that were provided by fraudulently incorporated professional corporations and/or professional corporations owned, controlled and operated in violation of New York State Law, and by virtue thereof, were not and are not entitled to reimbursement of No-fault benefits.

111.    On information and belief, in violation of Article 15 of the BCL and Article 130 of the Education Law, the Defendant Doctors had no control and/or ownership interest in the Defendant PCs which they purportedly owned, the proceeds of which were diverted from Plaintiffs, to Defendants Tvildiani, Ratnam and/or one or more of John Does 1 through 20.

112.    On information and belief, at the time each Defendant PC was incorporated in the State of New York, the Defendant Doctors were divested of ownership and control.

113.    By selling and/or permitting the use of their name and license, the Defendant

Doctors knowingly provided the essential means by which the Controllers, non-physicians, were able to own and control that in which they are prohibited by law from maintaining a financial interest in, to wit: a professional corporation that must be owned exclusively by a licensed professional or like professionals acting within the scope of the professional corporation's authorized practice.

114.    Defendants knew or should have known that medical records, reports, and bills would be submitted to insurers, in general, and Plaintiffs, in particular, on behalf of the Defendant PCs, entities that were not licensed in accordance with applicable New York State Law, and which were imbued with an illegal corporate structure, engaged in unlawful fee-splitting, and were ineligible to recover No-fault benefits.

115.    On information and belief, in violation of the BCL and Education Law, the Defendant Doctors maintained no control over how their respective Defendant PCs were operated and managed.

116.    On information and belief, to ensure that ownership and complete control of the Defendant PCs remained with the Controllers, the Defendant PCs' true owners, the Controllers caused the Defendant PCs to enter into one or more agreements with their respective Defendant Management Companies which they controlled and owned.

117.    On information and belief, the Controllers used their respective Defendant Management Companies as the vehicles to operate and control all of the Defendant PCs' operations and to funnel fraudulently obtained insurance payments to themselves.

118.    On information and belief, the Defendant PCs were required to pay exorbitant management fees, rents and other fees that ensured that the Defendant Doctors had no beneficial ownership interest in the Defendant PCs which they purported to own, and that the proceeds

derived therefrom were diverted to the Defendant Management Companies and the Controllers, the Defendant PCs' true owners.

119.    On information and belief, in accordance with the Defendant Doctor's illegal transfer of ownership and control, and in contravention of Sections 1503, 1504(a) and (c) and 1508 of the BCL, the Controllers exercised control over all aspects of the Defendant PCs which they illegally controlled, from billing, to preparing and creating medical reports, to signing medical records, to hiring all radiologists, technicians, other employees and support staff to work for the Defendant PCs, to collecting on the medical bills submitted to insurance companies, to scheduling the purported medical services the Defendant Doctors would provide that were billed to insurance companies, to making personnel decisions, to retaining attorneys to pursue No-fault collections on behalf of the Defendant PCs, to retaining other professionals such as accountants, to establishing relationships with the clinics that referred "patients" to the Defendant PCs, to controlling the bank account(s) opened in the name of the Defendant PCs, to determining what disbursements would be made from the Defendant PCs' accounts and to whom and for how much, to determining what agreements would be entered into on behalf and/or in the name of the Defendant PCs and to controlling and managing all other aspects of the finances of the Defendant PCs.

120.    On information and belief, consistent with the fact that the Defendant PCs were actually owned by the Controllers, the Controllers were not accountable to the Defendant Doctors with respect to the finances of the Defendant PCs.

121.    On information and belief, the Controllers and Defendant Management Companies did not provide, nor did the Defendant Doctors require or ever request, the Defendant PCs with daily, weekly, monthly or annual reports as to the Defendant PCs' income and

disbursements. In that regard, the Defendant Doctors' interest in the Defendant PCs was, at best, that of mere employees with no ownership or financial interest tied into the profits of the Defendant PCs and the finances of the Defendant PCs were irrelevant to them as long as they received their salaries and/or any other agreed upon compensation.

122.    On information and belief, the Defendant PCs' billing and collection activities were firmly controlled by the Controllers, and others under their direction, supervision and control. Through the Defendant PCs, the Controllers prepared and caused to be mailed insurance claim forms in the Defendant PCs' names. The claim forms prepared by the Controllers and/or the Defendant Management Companies directed insurers to mail checks to locations that were designated by the Controllers and the proceeds of those claims were either deposited in bank accounts under their control and/or later transferred to accounts under the control of the Controllers or the Defendant Management Companies.

123.    At all relevant times mentioned herein, the Defendant PCs were medical offices in name only. In fact, the Defendant PCs served as the alter ego for the Controllers and/or the Defendant Management Companies, and did not adhere to a separate and distinct function or corporate structure that would entitle them to be recognized as legitimate corporate entities. For all practical and legal purposes, the Defendant PCs were created and used for the purpose of defrauding insurers into paying No-fault claims to fraudulently incorporated professional corporations and/or professional corporations that were (a) not licensed in accordance with applicable New York State Law; and (b) engaging in unlawful fee-splitting with non-physicians.

124.    The Controllers and the Defendant Management Companies through their control, ownership and operation of their respective Defendant PCs became the centerpieces of parallel and virtually identical schemes involving interrelated professionals, including but not limited to

Defendant Khodadadi, to fraudulently bill No-fault insurance carriers, including but not limited to Allstate, for services, which were rendered by fraudulently incorporated professional corporations engaging in unlawful fee-splitting.

125.    On information and belief, Kissena Medical, Aim 4 Life Medical, Advanced Medical and Springfield Radiology, were well-organized illegal enterprises that engaged in systematic and fraudulent practices that distinguish them from legitimate healthcare providers. For instance, the components of each enterprise followed practices that were part of a racketeering scheme dictated by the Controllers:

- Unlike legitimate providers, the Controllers, through the one or more of the Defendant PCs, submitted bills to insurers, in general, and Allstate, in particular, that represented that the Defendant PCs were professional corporations owned by medical doctors when, in fact, they were not;

- Unlike legitimate providers, the Controllers, through one or more of the Defendant PCs, made false and misleading statements and/or provided false information regarding who owned, controlled and operated the Defendant PCs;

- Unlike legitimate providers, the Controllers, through one or more of the Defendant PCs, made false and misleading statements and/or provided false information intended to mislead Allstate into believing the Defendant PCs were being operated by their respective Paper Owners, whose names were listed on the certificates of incorporation when, in fact, they were not;

- Unlike legitimate providers, the Controllers, through one or more of the Defendant PCs, made false and misleading statements and/or provided false information intended to circumvent Article 15 of the New York State Business Corporation Law, which prohibits ownership by individuals not licensed to practice the profession for which a professional corporation was incorporated; and

- Unlike legitimate providers, the Controllers, through one or more of the Defendant PCs, concealed the fact that the Defendant PCs were engaged in the illegal corporate practice of medicine in contravention of New York State law, and that they were billing for physician services through fraudulently incorporated PCs.

126.    Each member of the parallel and virtually identical enterprises described herein

played a well-defined and essential role in the Defendants' scheme to defraud and in directing the affairs of those enterprises. By way of example and not limitation, in furtherance of their scheme to defraud, the Controllers:

- Entered into office and equipment lease agreements on behalf of one or more of the Defendant PCs;

- Opened, maintained and/or controlled the bank accounts of one or more of the Defendant PCs;

- Determined the physical space from which one or more of the Defendant PCs would (and did) purportedly maintain their operations;

- Prepared or caused to be prepared fraudulent bills and sent them to Allstate;

- Ensured that the profits from their criminal enterprises were funneled to themselves and others unknown to Allstate.

- Recruited the Defendant Doctors to serve as the nominal owners of the Defendant PCs, divesting each of them immediately of any attributes of ownership in the professional corporations;

- Managed the day to day operations of one or more of the Defendant PCs, including but not limited to hiring professional medical and non-medical staff and personnel;

- Participated, or caused those acting under their supervision and direction, in the preparation and mailing of bogus claims on behalf of one or more of the Defendant PCs, knowing that they contained materially false and misleading information, including that the billed for services were provided by properly licensed professional corporations, when in fact, they were not; and

- Entered into separate arrangements with one or more medical clinics operating in the New York metropolitan area that bill No-fault insurers for medical services (hereinafter "No-fault Clinics") to secure a referral source and patient population for one or more of the Defendant PCs.

127. By way of example and not limitation, in furtherance of the Springfield Boulevard Scheme to Defraud alleged herein, Defendant Tvildiani and/or one or more of John Does 1 through 20:

- Opened, maintained and/or controlled the bank accounts, and was a signatory on Aim 4 Life Medical, Advanced Medical and/or Springfield Radiology's bank accounts;

- Received more than two-thirds of the revenue generated by one or more of the Springfield Boulevard PCs;

- Caused payments made by one or more of the Springfield Boulevard PCs to one or more of the Tvildiani Management Companies to be structured in amounts slightly less than $10,000.00 in order to avoid currency reporting requirements in violation of the Money Laundering Control Act of 1986, 18 U.S.C § 195;

- Recruited Mikhelashvili to serve as the Paper owner of one or more of the Springfield Boulevard PCs; and

- Hired all of the medical professionals and office personnel who worked at the Springfield Boulevard PCs;

128.    By way of example and not limitation, in furtherance of the Kissena Medical Scheme to Defraud alleged herein, Defendant Ratnam and/or one or more of John Does 1 through 20:

- Entered into lease agreements on behalf of Kissena Medical and/or Holly Inc. for the diagnostic imaging equipment used by Kissena Medical;

- Personally guaranteed payment related to the diagnostic imaging equipment leased on behalf of Kissena Medical;

- Recruited Defendant Khodadadi to purportedly perform professional medical services on behalf of Kissena Medical;

- Filed or caused to be filed Uniform Commercial Code ("UCC") filings indicating that Holly, Inc. is the "owner" of personal property purportedly pledged by Kissena Medical.

- Filed or caused to be filed UCC filings indicating that Kissena Medical is a fictitious name or "DBA" for Holly, Inc.

129.    By way of further example, in furtherance of the scheme to defraud alleged herein, the Defendant Doctors:

- Allowed the use of their name and license by the Controllers to fraudulently incorporate one or more of the Defendant PCs;

31

- Provided the essential means through which the Controllers (non-physicians) were able to own the Defendant PCs in contravention of New York State Law;

- Ceded ownership and control of the Defendant PCs;

- Abdicated any and all attributes of ownership and control to the Controllers;

- Maintained no control over how the Defendant PCs were operated and managed; and

- Allowed their name and license to be used to pursue fraudulent claims on behalf of the Defendant PCs which were unlawfully formed and operated by the Controllers.

## MECHANICS OF THE SCHEMES TO DEFRAUD

130.   On information and belief, the Controllers conducted their business, affairs and operations through various entities, known and unknown to Plaintiffs.

131.   Though the Controllers attempted to conceal their ownership of the Defendant PCs, they did in fact use the Defendant Doctors as the Paper Owners of the Defendant PCs over which they exercised control.

132.   From their respective dates of incorporation through the date of the filing of this Complaint, the Controllers hid their beneficial ownership of the Defendant PCs in order to falsely lead No-fault insurance carriers, in general, and Allstate, in particular, to believe that the Defendant PCs were lawfully incorporated and legitimate professional corporations when in fact they were not.

133.   Defendants also concealed the fact that the Controllers were the true owners and pecuniary beneficiaries of the respective Defendant PCs, which the Controllers illegally owned, operated, and/or controlled in order to circumvent the Business Corporation Law of New York State, which prohibits non-physicians from owning professional corporations that render medical services.  Specifically, Section 1507 of the Business Corporation Law of the State of New York permits the ownership of a professional corporation by only those "individuals who are

authorized by law to practice in this state [New York] a profession which such corporation is authorized to practice."

134.     By concealing the fact that the Controllers were the true owners and pecuniary beneficiaries of the Defendant PCs, Defendants circumvented the restrictions contained in Article 15 of the BCL, which are designed to "ensure that a professional service corporation renders professional services only through qualified members of the professions and are controlled only by qualified members." New York Legislative Annual 1970, p. 129

**A.**      **The Springfield Boulevard Scheme to Defraud**

135.     On information and belief, between 2005 and 2012, Defendant Tvildiani, and/or one or more of John Does 1 through 20, created at least seven fraudulent medical professional corporations, including: (i) non-defendants Radiology Imaging Professional, PC, Beech Imaging & Diagnostic, PC, and Springfield Medical Diagnostics, PC; and (ii) Defendants Aim 4 Life Medical, Advanced Medical and Springfield Radiology (Aim 4 Life Medical, Advanced Medical and Springfield Radiology are referred to collectively as the "Springfield Boulevard PCs"), all of which operate out of 68-29 Springfield Boulevard, Oakland Gardens, NY 11364.

136.     On information and belief, Tvildiani, and/or one or more of John Does 1 through 20, are the owners of the premises located at 68-29 Springfield Boulevard, Oakland Gardens, NY 11364 ("68-29 Springfield Boulevard").

137.     On information and belief, in order to avoid suspicion and detection by insurance companies, almost annually, Tvildiani, and/or one or more of John Does 1 through 20, incorporated a professional corporation under a new name to operate at 68-29 Springfield Boulevard in order to deceptively lead No-fault insurance carriers, in general, and Allstate, in particular, to believe that each were separate, distinct and independent entities.

138.    The dates of incorporation, names of the Paper Owner(s) of the Springfield Boulevard PCs, as well as the non-defendant PCs also owned by Tvildiani which operate out of 68-29 Springfield Boulevard are as follows:

| P.C. | Date of Incorporation | Paper Owner |
|---|---|---|
| Radiology Imaging Professional, PC | 07/22/05 | Harold Warren, MD |
| Beech Imaging & Diagnostic, PC | 03/08/06 | Allen Rothpearl, MD |
| Aim 4 Life Medical | 06/19/07 | Noradi Mikhelashvili, MD |
| Advanced Medical | 03/24/08 | Noradi Mikhelashvili, MD |
| Springfield Medical Diagnostics, PC | 08/20/10 | Noradi Mikhelashvili, MD |
| Springfield Radiology | 05/31/12 | Ayoob Khodadadi, MD |

139.    On information and belief, the Springfield Boulevard PCs, including Defendants Aim 4 Life Medical, Advanced Medical and Springfield Radiology, were used interchangeably by Tvildiani, and/or one or more of John Does 1 through 20, and were operated with complete disregard for the requirements that they maintain separate and distinct legal identities. For all practical and legal purposes, the Springfield Boulevard PCs are one and the same, utilized independently and collectively for the sole purpose of facilitating the criminal activities of the Springfield Boulevard Scheme to Defraud.

140.    On information and belief, in violation of Article 15 of the BCL, Tvildiani purchased or otherwise was permitted to use the name and license of Defendant Mikhelashvili to fraudulently incorporate, own, control and/or operate Aim 4 Life, a professional corporation, incorporated as a successor to non-defendant Beech Imaging & Diagnostic, PC, that was used to bill insurance companies, in general, and Plaintiffs in particular.

141.    On information and belief, although new corporate papers were filed on behalf of Aim 4 Life, it was established as a successor to Beech Imaging & Diagnostic, PC to carry on the scheme to defraud alleged herein through a new illegal corporate structure as evident by the fact that virtually every aspect of Aim 4 Life's operations was identical to Beech Imaging & Diagnostic, PC, from the "office managers" to office personnel to billing procedures to office phone numbers to medical and office equipment used.

142.    Similarly, in violation of Article 15 of the BCL, Tvildiani also purchased or otherwise was permitted to use the name and license of Defendant Mikhelashvili to fraudulently incorporate, own, control and/or operate Advanced Medical, a professional corporation, incorporated as a successor to Aim 4 Life, which was used to bill insurance companies, in general, and Plaintiffs in particular.

143.    On information and belief, although new corporate papers were filed on behalf of Advanced Medical, it was established as a successor to Aim 4 Life to carry on the scheme to defraud alleged herein through a new illegal corporate structure as evident by the fact that virtually every aspect of Advanced Medical's operations was identical to Aim 4 Life, from the "office managers" to office personnel to billing procedures to office phone numbers to medical and office equipment used.

144.    In addition, in violation of Article 15 of the BCL, Tvildiani and/or one or more of the John Doe Defendants also purchased or otherwise was permitted to use the name and license of Defendant Khodadadi to fraudulently incorporate, own, control and/or operate non-defendant Springfield Medical Diagnostics PC in 2010 and Springfield Radiology in 2012, professional corporations that were used to fraudulently bill insurance companies, in general, and Plaintiffs in particular.

145. On information and belief, although new corporate papers were filed on behalf of non-defendant Springfield Medical Diagnostics PC, it was established as a successor to Advanced Medical to carry on the scheme to defraud alleged herein through a new illegal corporate structure as evident by the fact that virtually every aspect of non-defendant Springfield Medical Diagnostics PC's operations was identical to Advanced Medical, from the "office managers" to office personnel to billing procedures to office phone numbers to medical and office equipment used.

146. Similarly, although new corporate papers were filed on behalf of Springfield Radiology, it was established as a successor to non-defendant Springfield Medical Diagnostics PC to carry on the scheme to defraud alleged herein through a new illegal corporate structure as evident by the fact that virtually every aspect of Springfield Radiology's operations was identical to non-defendant Springfield Medical Diagnostics PC, from the "office managers" to office personnel to billing procedures to office phone numbers to medical and office equipment used.

147. On information and belief, when a new Springfield Boulevard PC was incorporated and operated out of the same address, the one incorporated immediately before it was gradually phased out and stopped billing insurance companies, in general, and Plaintiffs, in particular, allowing for an overlap between two or more of the Defendant PCs at a time. By way of example and not limitation, Advanced Medical billed, to Allstate, $909,525.22 in 2010, $753,670.39 in 2011, $375,353.28 in 2012 and barely $2,700.000 in 2013, when it essentially ceased billing in lieu of Springfield Radiology, which billed Allstate $158,582.85 in 2012 and $256,161.14 in 2013.

148. By way of further example and not limitation, the Defendant Doctors who are listed as owners with the New York Department of State did not make any capital investment or

incur any start-up costs to begin the operation of their respective PCs. Other than the change in the professional corporation's name, Aim 4 Life Medical, Advanced Medical and Springfield Radiology:

- operated out of a building which Tvildiani owns, located at 68-29 Springfield Boulevard, Oakland Gardens, NY 11369;

- used the same telephone phone numbers, *to wit*: (718) 279-1300 and (718) 279-0020;

- used the same telephone fax number, *to wit*: (718) 785-3025;

- developed and maintained relationships with the same No-fault clinics which served as a referral source for diagnostic services;

- maintained the same professional and non-professional employees;

- did not negotiate any new leases or subleases for the premises where they maintained their operations;

- used the same office spaces and diagnostic equipment;

- did not negotiate any new leases or subleases for the diagnostic equipment maintained at 68-29 Springfield Boulevard, Oakland Gardens, NY 11369;

- billed for the same types of diagnostic services; and

- used the same or substantially similar narrative reports and/or billing documents.

149.    On information and belief, Tvildiani, and/or one or more of John Does 1 through 20, created and/or used Medeq Int'l, Image Pro and Iberia Management (the "Tvildiani Management Companies") to serve as billing and/or management companies for Aim 4 Life Medical, Advanced Medical, and/or Springfield Radiology, which were ostensibly rendering health services to persons covered by the New York State No-Fault Law. In reality, the Tvildiani Management Companies were conceived and functioned as conduits to funnel payments made by

the insurance companies, in general, and Allstate, in particular, through the Defendant PCs, to Tvildiani.

150.   On information and belief, the Tvildiani Management Companies served as the alter egos for Aim 4 Life Medical, Advanced Medical, and/or Springfield Radiology for the purpose of concealing that Tvildiani, and/or one or more of John Does 1 through 20, was their true, beneficial Owner.   By way of example and not limitation that the Tvildiani Management Companies served as the alter egos for Aim 4 Life Medical, Advanced Medical, and/or Springfield Radiology, public records indicate that each of the Tvildiani Management Companies operates out of the same address as Aim 4 Life Medical, Advanced Medical, and Springfield Radiology, *to wit*: 68-29 Springfield Boulevard, Oakland Gardens, NY 11369.

151.   In   addition,   on   information   and   belief,   one   or   more   of   the the Tvildiani Management Companies share telephone numbers with Aim 4 Life Medical, Advanced Medical, and Springfield Radiology, with public records indicating the telephone number for Medeq International LLC  to be (718) 279-1300 and the telephone number for Image Pro LLC to be (718) 279-0200, and with public records also revealing that both of those telephone numbers are also associated with Aim 4 Life Medical, Advanced Medical, and Springfield Radiology.

152.   On information and belief, Tvildiani, and/or one or more of John Does 1 through 20, determined the terms and/or unilaterally established the manner and means through which the Tvildiani Management Companies would purportedly manage Aim 4 Life Medical, Advanced Medical, and Springfield Radiology's practices, as well as the manner and means through which the Tvildiani Management Companies would conduct billing and collection services for Aim 4 Life Medical, Advanced Medical, and Springfield Radiology.  As a result, Tvildiani, and/or one

or more of John Does 1 through 20, controlled and operated every aspect of Aim 4 Life Medical, Advanced Medical, and Springfield Radiology's business.

153.    On information and belief, the fee arrangements under these agreements were set by Tvildiani, and/or one or more of John Does 1 through 20. Pursuant to the arrangements, the money Aim 4 Life Medical, Advanced Medical, and Springfield Radiology paid to Tvildiani's Management Companies was never pursuant to a set fee or percentage, but increased and/or decreased year to year to ensure that Aim 4 Life Medical, Advanced Medical, and Springfield Radiology's gross billings were paid to the Tvildiani Management Companies, and were eventually funneled to Tvildiani, and/or one or more of John Does 1 through 20.

154.    On information and belief, Tvildiani, and/or one or more of John Does 1 through 20, provided all start-up costs and investment in Aim 4 Life Medical, Advanced Medical and Springfield Radiology, with their respective Paper Owners incurring no costs to establish, and investing no money in, the practices which they purported to own.

155.    On information and belief, under the arrangement established with Tvildiani, and/or one or more of John Does 1 through 20, and/or his management companies, Defendants Mikhelashvili and Khodadadi's draw and/or other compensation from Aim 4 Life Medical and Advanced Medical, and Springfield Radiology, respectively, was established by Tvildiani, and/or one or more of John Does 1 through 20, and remained fairly constant regardless of the amounts collected by the PCs.

156.    By way of example and not limitation, on information and belief, Mikhelashvili received, from Tvildiani, and/or one or more of John Does 1 through 20, a set monthly payment of between $7,000.00 and $8,000.00 per month for the use of his name as owner of Advanced Medical and Springfield Radiology, irrespective of the amounts collected by those PCs.

157.    Moreover, on information and belief, the compensation Mikhelashvili and/or Khodadadi received did not change based on the services the Tvildiani Management Companies purportedly provided, the revenue that was generated, or expenses incurred by Aim 4 Life Medical, Advanced Medical and Springfield Radiology, respectively, but rather remained the same regardless of their financial condition or profitability. As a result, Mikhelashvili and Khodadadi did not have an ownership or pecuniary interest in the profits of the businesses they purportedly owned.

158.    On information and belief, the sole purpose of the relationship between Aim 4 Life Medical, Advanced Medical, and Springfield Radiology, Tvildiani, one or more of John Does 1 through 20, and the Tvildiani Management Companies was, after paying Mikhelashvili and Khodadadi their set draw, to funnel the money from Aim 4 Life Medical, Advanced Medical, and Springfield Radiology to the management companies controlled by Tvildiani, and/or one or more of John Does 1 through 20.

159.    On information and belief, once Aim 4 Life Medical, Advanced Medical, and Springfield Radiology were created, Medeq Int'l, Image Pro and/or Iberia Management, each owned by Defendant Tvildiani and/or one or more of John Does 1 through 20, generated medical records, reports and bills for services purportedly provided by legitimate professional corporations, when, in fact, they were not.

160.    On information and belief, Aim 4 Life Medical, Advanced Medical, and Springfield Radiology provided the vehicles through which Tvildiani, and/or one or more of John Does 1 through 20, was able to engage in a systematic billing scheme premised entirely on the ability to pass millions of dollars through fraudulently incorporated professional corporations.

161.    On information and belief, as part of the scheme to defraud, Tvildiani, and/or one or more of John Does 1 through 20, through Medeq Int'l, Image Pro and/or Iberia Management operated, controlled and managed Aim 4 Life Medical, Advanced Medical, and Springfield Radiology, and employed personnel who were responsible for creating and generating their fraudulent bills and medical records, and causing No-fault forms to be submitted to insurance carriers.

162.    On information and belief, neither Mikhelashvili nor Khodadadi exercised control or maintained the books and records, including accounting records, financial records, and bank statements and reports relating to the PCs which they purportedly owned, all of which were controlled and maintained by Tvildiani and/or one or more of John Does 1 through 20, and/or others acting under their direction and control.

163.    By way of example and not limitation that Mikhelashvili and Khodadadi did not exercise control over the PCs which they purportedly owned, on information and belief, they did not:

- Maintain a physical presence at the Defendant PCs;

- Supervise the activities of the practice of the Defendant PCs;

- Control the money and other assets of the Defendant PCs;

- Contribute any capital to the Defendant PCs;

- Negotiate any lease agreements relating to the physical premises and equipment for the Defendant PCs;

- Receive any profits or percentage of profit, revenue or other income from the Defendant PCs, except for their set salary;

- Receive any profits, distributions or dividends from the Defendant PCs;

- Receive any type of written daily, weekly, monthly or annual accountings, financial ledgers, or reports of the accounts receivable of the Defendant PCs;

- Receive any type of written daily, weekly, monthly or annual accountings or financial ledgers of the cash receipts of the Defendant PCs;

- Receive any type of written daily, weekly, monthly or annual accountings of receipts and disbursements of the Defendant PCs;

- Manage the daily operations of the business of the of the Defendant PCs;

- Hire any employees, professional or non-professional, for the Defendant PCs;

- Negotiate or determine the salaries for any employees, professional or non-professional, for the Defendant PCs;

- Purchase, lease, select, order, or arrange to maintain or repair any of the equipment housed at the location of the Defendant PCs.

164.  By way of example and not limitation that the Paper Owners of the Springfield Boulevard PCs do not exercise control over the PCs which they purportedly owned, Defendant Mikhelashvili has worked for the past seven (7) years as an anesthesiologist at LI Gastroenterology Group PC, in Merrick, Long Island, NY, and does not perform any radiological or other medical services, or maintain a physical presence at the Springfield Boulevard PCs.

165.  On information and belief, Tvildiani, and/or one or more of John Does 1 through 20, managed, supervised, participated in, conducted and oversaw the day-to-day billing and operations of Aim 4 Life Medical, Advanced Medical, and Springfield Radiology which he owned, operated and/or controlled.

166.  On information and belief, Tvildiani, and/or one or more of John Does 1 through 20, further exercised control over Aim 4 Life Medical, Advanced Medical, and Springfield Radiology through Medeq Int'l, Image Pro and/or Iberia Management, which they also owned,

by, among other things:

- Causing Aim 4 Life Medical, Advanced Medical, and Springfield Radiology, to enter into management, billing, equipment and/or other service agreements all for the purpose of diverting insurance payments received by Aim 4 Life Medical, Advanced Medical, and Springfield Radiology, to him, through the Tvildiani Management Companies, for the purpose of engaging in illegal fee-splitting;

- Making personnel decisions on behalf of Aim 4 Life Medical, Advanced Medical, and Springfield Radiology, including hiring medical personnel and support staff and establishing their salaries;

- Managing, operating and supervising the affairs of Aim 4 Life Medical, Advanced Medical, and Springfield Radiology;

- Preparing and generating medical records and bills for submission to insurers that fraudulently represented that the services were rendered by properly licensed providers of healthcare services when, in fact, they were not;

- Falsifying information contained in the New York State NF-3 forms submitted by Aim 4 Life Medical, Advanced Medical, and Springfield Radiology, to No-fault insurance carriers, in general, and Plaintiffs, in particular, and by preparing fraudulent supporting documentation;

- Establishing the office location for Aim 4 Life Medical, Advanced Medical, and Springfield Radiology;

- Establishing, supervising and controlling the payroll of Aim 4 Life Medical, Advanced Medical, and Springfield Radiology; and

- Establishing, supervising and controlling the finances and bank accounts of Aim 4 Life Medical, Advanced Medical, and Springfield Radiology, including issuing and/or causing to be issued checks and disbursements out of their bank accounts of those PCs.

167. On information and belief, through the agreements described above, Tvildiani, and/or one or more of John Does 1 through 20, purchased the right to use the name and license of Mikhelashvili and Khodadadi for the purpose of submitting claims to No-fault carriers, in general, and Allstate, in particular, for services provided by fraudulently incorporated professional corporations that are not entitled to reimbursement under New York State Law.

**B.     The Kissena Scheme to Defraud**

168.    Similarly, Defendant Ratnam, a layperson not licensed to practice any healthcare profession in the State of New York, owned, operated and controlled Kissena Medical, a separate, but parallel and virtually identical enterprise to the Aim 4 Life Medical, Advanced Medical, and Springfield Radiology enterprises, and which was used to fraudulently bill insurance companies, in general, and Allstate, in particular.

169.    By way of example and not limitation of the interrelationship between the Kissena Medical and Springfield Radiology enterprises, Defendant Khodadadi appears on billing submitted to Allstate on behalf of Kissena Medical, while at the same time, serving as the Paper Owner of Springfield Radiology.

170.    On information and belief, Ratnam created Holly, Inc., which served as an alter ego for Kissena Medical for the purpose of concealing that he was the true owner of Kissena Medical. By way of example and not limitation that that Holly, Inc. served as alter ego for Kissena Medical, public records indicate that both of those corporations share an address and telephone number, *to wit*: 140-015 Holly Ave., Flushing, NY 11355 and (718) 961-1663, respectively.

171.    In addition, Uniform Commercial Code ("UCC") filings indicate that Holly, Inc. is the "owner" of personal property purportedly pledged by Kissena Medical, and that Kissena Medical is a fictitious name or "DBA" for Holly, Inc.

172.    On information and belief, Ratnam, and/or one or more of John Does 1 through 20, determined the terms and/or unilaterally established the manner and means through which Kissena Medical would be managed, as well as the manner and means through which Holly, Inc. would conduct management and/or billing and collection services for the PC. As a result,

Ratnam, and/or one or more of John Does 1 through 20, controlled and operated every aspect of Kissena Medical's business.

173.  On information and belief, the fee arrangements between Holly, Inc. and Kissena Medical were set by Ratnam, and/or one or more of John Does 1 through 20. Pursuant to the arrangements, the monies Kissena Medical paid to Holly Inc. were never pursuant to a set fee or percentage, but increased and/or decreased year to year to ensure that Kissena Medical's gross billings were paid to Holly, Inc., and were eventually funneled to Ratnam, and/or one or more of John Does 1 through 20.

174.  On information and belief, Ratnam, and/or one or more of John Does 1 through 20 provided all start-up costs and investment capital in Kissena Medical, and Defendant Doctor Diamond did not incur any costs to establish its practice, nor invest any money in the practice he purportedly owned.

175.  On information and belief, under the arrangement established with Ratnam, one or one or more of John Does 1 through 20 and/or Holly, Inc., Diamond's draw and/or other compensation from Kissena Medical, which was established by Ratnam, and/or one or more of John Does 1 through 20, remained fairly constant regardless of the amounts collected by Kissena Medical.

176.  Moreover, on information and belief, the compensation Diamond received did not change based on the services that Holly, Inc. provided, the revenue that was generated, or expenses incurred by Kissena Medical, but rather remained the same regardless of the financial condition or profitability of the PC. As a result, Diamond did not have an ownership or pecuniary interest in the profits of the business he purportedly owned.

177.  On information and belief, the sole purpose of the relationship between Kissena

Medical, Ratnam, one or more of John Does 1 through 20 and Holly, Inc. was, after paying Diamond his set draw, to funnel the money from Kissena Medical to Holly, Inc., which was controlled by Ratnam, and/or one or more of John Does 1 through 20.

178.   On information and belief, Holly, Inc., owned by Defendant Ratnam, and/or one or more of John Does 1 through 20 generated medical records, reports and bills for services purportedly provided by Kissena Medical, as if it were a legitimate medical professional corporation, when, in fact, it was not.

179.   On information and belief, Kissena Medical provided the vehicle through which Ratnam, and/or one or more of John Does 1 through 20 were able to engage in a systematic, billing scheme premised entirely on his ability to pass hundreds of thousands, if not millions of dollars through a fraudulently incorporated professional corporation.

180.   On information and belief, as part of the scheme to defraud, Ratnam, and/or one or more of John Does 1 through 20, through Holly, Inc., operated, controlled and managed Kissena Medical, and employed personnel who were responsible for creating and generating their fraudulent bills, medical records, and No-fault forms to be submitted to insurance carriers.

181.   On information and belief, Diamond did not exercise control nor maintain Kissena Medical's books and records, including accounting records, financial records, bank statements and reports, all of which were controlled and maintained by Ratnam,  one or more of John Does 1 through 20 and/or others acting under their direction and control.  By way of example and not limitation that Diamond did not exercise control over Kissena Medical, on information and belief, Diamond did not:

- Maintain a physical presence at Kissena Medical;

- Supervise the activities of the practice of Kissena Medical;

- Control the money and other assets of Kissena Medical;

- Contribute any capital to Kissena Medical;

- Negotiate any lease agreements relating to the physical premises and equipment for Kissena Medical;

- Receive any profits or percentage of profit, revenue or other income from Kissena Medical, except for his set salary;

- Receive any profits, distributions or dividends from Kissena Medical;

- Manage the daily operations of the business of the of Kissena Medical;

- Hire any employees, professional or non-professional for Kissena Medical;

- Negotiate or determine the salaries for any employees, professional or non-professional, employed by Kissena Medical; and

- Purchase, lease, select, order, arrange to maintain or repair any of the equipment housed at the premises where Kissena Medical maintained its operations.

182.    By way of further example and not limitation that Defendant Diamond does not exercise control over Kissena Medical, which he purportedly owned, Defendant Diamond practices Family and Geriatric Medicine at a practice separate from Kissena Medical, and does not perform any radiological or other medical services, or maintain a physical presence at the Kissena Medical.

183.    On information and belief, Ratnam, and/or one or more of John Does 1 through 20, managed, supervised, participated in, conducted and oversaw the day-to-day billing and operations of Kissena Medical, which he owned, operated and/or controlled.

184.    On information and belief, Ratnam, and/or one or more of John Does 1 through 20 further exercised control over Kissena Medical through Holly, Inc., by, among other things:

- Causing Kissena Medical to enter into management, billing, equipment and/or other service agreements all for the purpose of diverting insurance payments received by Kissena Medical to Ratnam, and/or one or more of John Does 1 through 20, through Holly, Inc. for the purpose of engaging in illegal fee-splitting;

- Making personnel decisions on behalf Kissena Medical, including hiring medical personnel and support staff and establishing their salaries;

- Managing, operating and supervising the affairs of Kissena Medical;

- Preparing and generating medical records and bills for submission to insurers that fraudulently represented that the services were rendered by properly licensed providers of healthcare services when, in fact, they were not;

- Falsifying information contained in the New York State NF-3 forms submitted by Kissena Medical to No-fault insurance carriers, in general, and Allstate, in particular, and by preparing fraudulent supporting documentation;

- Owning and establishing the office location for Kissena Medical;

- Establishing, supervising and controlling Kissena Medical's payroll;

- Establishing, supervising and controlling the finances and bank accounts of Kissena Medical, including issuing and/or causing to be issued checks and disbursements out of the bank accounts for Kissena Medical.

185.   On information and belief, through the agreements described above, Ratnam, and/or one or more of John Does 1 through 20, purchased the right to use the name and license of Defendant Doctor Diamond for the purpose of submitting claims to No-fault carriers, in general, and Allstate, in particular, for services provided by fraudulently incorporated professional corporations that are not entitled to reimbursement under New York State Law.

## DISCOVERY OF THE FRAUD

186.   Based upon Defendants' material misrepresentations and other affirmative acts to conceal their fraud, described above, Plaintiffs did not discover and should not have reasonably discovered that their damages were attributable to fraud until shortly before they filed their complaint.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF

### AGAINST DEFENDANTS DIMITRY TVILIDIANI, NORADI MIKHELASHVILI, M.D., MEDEQ INT'L, IMAGE PRO, IBERIA MANAGEMENT,  JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20

### [RICO, pursuant to 18 U.S.C. § 1962(c)]

187.    The allegations of paragraphs 1  through 186  are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

188.    At all times relevant herein, Aim 4 Life Medical was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

189.    From in or about 2007, through the date of the filing of this Complaint, Defendants Dimitry Tvildiani, Noradi Mikhelashvili, M.D., Medeq Int'l, Image Pro, Iberia Management, John Does 1 through 20 and ABC Corporations 1 through 20 knowingly conducted and participated in the affairs of the Aim 4 Life Medical Enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein, in the representative list of predicate acts set forth in the accompanying Appendix, which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

190.    At all relevant times mentioned herein, Defendant Tvildiani was the principal of, exerted control over, and directed the operations of the Aim 4 Life Medical Enterprise. Defendant Tvildiani utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs.

191.   At all relevant times mentioned herein, Defendant Mikhelashvili was employed by or associated with the Aim 4 Life Medical Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity. In addition, Defendant Mikhelashvili furnished his name and professional license to the Aim 4 Life Medical Enterprise and provided the essential means for the Enterprise to fraudulently incorporate a bogus professional service corporation and fraudulently bill insurance companies.

192.   On information and belief, one or more of John Does 1 through 20 were associated with the Aim 4 Life Medical Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.

193.   On information and belief, Medeq Int'l, Image Pro and Iberia Management participated in and conducted the affairs of the Aim 4 Life Medical Enterprise, including concealing Defendants' scheme to defraud and money laundering activities.

194.   On information and belief, one or more of the ABC Corporations were associated with the Aim 4 Life Medical Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.

## THE PATTERN OF RACKETEERING ACTIVITY
## (RACKETEERING ACTS)

195.   The racketeering acts set forth herein were carried out over a seven year period, were related and similar, and were committed as part of Defendants' scheme to use their control of Aim 4 Life Medical to defraud insurers and if not stopped will continue into the future.

196.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Aim 4 Life Medical continues to pursue collection on the fraudulent bills to the present day.

197.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Defendants caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate and to induce Allstate to issue checks to the Aim 4 Life Medical Enterprise based upon materially false and misleading information.

198.    Through the Aim 4 Life Medical Enterprise, Defendants submitted or caused to be submitted thousands of fraudulent claim forms seeking payment for Diagnostic Testing provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Aim 4 Life Medical Enterprise through the filing of this complaint.

199.    A sample list of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

200.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

201.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## THE DAMAGES

202.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate has been injured in its business and property and Allstate has been damaged in the aggregate amount presently in excess of $32,000.00, the exact amount to be determined at trial.

203.    Pursuant to 18 U.S.C. § 1964(c), Allstate is entitled to recover from Defendants Dimitry Tvildiani, Noradi Mikhelashvili, M.D., Medeq Int'l, Image Pro, Iberia Management, John Does 1 through 20 and ABC Corporations 1 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF

### AGAINST DEFENDANTS DIMITRY TVILIDIANI, NORADI MIKHELASHVILI, M.D., MEDEQ INT'L, IMAGE PRO, IBERIA MANAGEMENT,  JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20

### [RICO, pursuant to 18 U.S.C. § 1962(c)]

204.    The allegations of paragraphs 1  through 186  are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

205.    At all times relevant herein, Advanced Medical was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

206.    From in or about 2008, through the date of the filing of this Complaint, Defendants Dimitry Tvildiani, Noradi Mikhelashvili, M.D., Medeq Int'l, Image Pro, Iberia Management, John Does 1 through 20 and ABC Corporations 1 through 20 knowingly conducted and participated in the affairs of the Advanced Medical Enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein, in the

representative list of predicate acts set forth in the accompanying Appendix, which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

207.   At all relevant times mentioned herein, Defendant Tvildiani was the principal of, exerted control over, and directed the operations of the Advanced Medical Enterprise. Defendant Tvildiani utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs.

208.   At all relevant times mentioned herein, Defendant Mikhelashvili was employed by or associated with the Advanced Medical Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity. In addition, Defendant Mikhelashvili furnished his name and professional license to the Advanced Medical Enterprise and provided the essential means for the Enterprise to fraudulently incorporate a bogus professional service corporation and fraudulently bill insurance companies.

209.   On information and belief, one or more of John Does 1 through 20 were associated with the Advanced Medical Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.

210.   On information and belief, Medeq Int'l, Image Pro and Iberia Management participated in and conducted the affairs of the Advanced Medical Enterprise, including concealing Defendants' scheme to defraud and money laundering activities.

211.   On information and belief, one or more of the ABC Corporations were associated with the Advanced Medical Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.

## THE PATTERN OF RACKETEERING ACTIVITY

## (RACKETEERING ACTS)

212.    The racketeering acts set forth herein were carried out over a six year period, were related and similar, and were committed as part of Defendants' scheme to use their control of Advanced Medical to defraud insurers and if not stopped will continue into the future.

213.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Advanced Medical continues to pursue collection on the fraudulent bills to the present day.

214.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Defendants caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate and to induce Allstate to issue checks to the Advanced Medical Enterprise based upon materially false and misleading information.

215.    Through the Advanced Medical Enterprise, Defendants submitted or caused to be submitted thousands of fraudulent claim forms seeking payment for Diagnostic Testing provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Advanced Medical Enterprise through the filing of this complaint.

216.    A sample list of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

217.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

218.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## THE DAMAGES

219.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate has been injured in its business and property and Allstate has been damaged in the aggregate amount presently in excess of $2,400,000.00, the exact amount to be determined at trial.

220.    Pursuant to 18 U.S.C. § 1964(c), Allstate is entitled to recover from Defendants Dimitry Tvildiani, Noradi Mikhelashvili, M.D. Medeq Int'l, Image Pro, Iberia Management, John Does 1 through 20 and ABC Corporations 1 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### THIRD CLAIM FOR RELIEF

**AGAINST DEFENDANTS DIMITRY TVILIDIANI, AYOOB KHODADADI, M.D., MEDEQ INT'L, IMAGE PRO, IBERIA MANAGEMENT, JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20**

**[RICO, pursuant to 18 U.S.C. § 1962(c)]**

221.    The allegations of paragraphs 1  through 186  are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

222.    At all times relevant herein, Springfield Radiology was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

223.    From in or about 2012, through the date of the filing of this Complaint, Defendants Dimitry Tvildiani, Ayoob Khodadadi, M.D., Medeq Int'l, Image Pro, Iberia Management, John Does 1 Through 20 and ABC Corporations 1 Through 20 knowingly conducted and participated in the affairs of the Springfield Radiology Enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein, in the representative list of predicate acts set forth in the accompanying Appendix, which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

224.    At all relevant times mentioned herein, Defendant Tvildiani was the principal of, exerted control over, and directed the operations of the Springfield Radiology Enterprise. Defendant Tvildiani utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs.

225.    At all relevant times mentioned herein, Defendant Khodadadi was employed by or associated with the Springfield Radiology Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity. In addition, Defendant Khodadadi furnished his name and professional license to the Springfield Radiology Enterprise and provided the essential means for the Enterprise to fraudulently incorporate a bogus professional service corporation and fraudulently bill insurance companies.

226.    On information and belief, one or more of John Does 1 through 20 were associated with the Springfield Radiology Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.

227.    On information and belief, Medeq Int'l, Image Pro and Iberia Management participated in and conducted the affairs of the Springfield Radiology Enterprise, including concealing Defendants' scheme to defraud and money laundering activities.

228.    On information and belief, one or more of the ABC Corporations were associated with the Springfield Radiology Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.

## THE PATTERN OF RACKETEERING ACTIVITY

## (RACKETEERING ACTS)

229.    The racketeering acts set forth herein were carried out over a two year period, were related and similar, and were committed as part of Defendants' scheme to use their control of Springfield Radiology to defraud insurers and if not stopped will continue into the future.

230.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Springfield Radiology continues to pursue collection on the fraudulent bills to the present day.

231.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Defendants caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate and to induce Allstate to issue checks to the Springfield Radiology Enterprise based upon materially false and misleading information.

232.    Through the Springfield Radiology Enterprise, Defendants submitted or caused to be submitted thousands of fraudulent claim forms seeking payment for Diagnostic Testing provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Springfield Radiology Enterprise through the filing of this complaint.

233.    A sample list of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

234.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

235.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## THE DAMAGES

236.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate has been injured in its business and property and Allstate has been damaged in the aggregate amount presently in excess of $83,000.00, the exact amount to be determined at trial.

237.    Pursuant to 18 U.S.C. § 1964(c), Allstate is entitled to recover from Defendants Dimitry Tvildiani, Ayoob Khodadadi, M.D., Medeq Int'l, Image Pro, Iberia Management, John Does 1 through 20 and ABC Corporations 1 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## FOURTH CLAIM FOR RELIEF

**AGAINST DEFENDANTS DEVINENI RATNAM, LAWRENCE DIAMOND, M.D. HOLLY, INC., JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH <u>20</u>**

**[RICO, pursuant to 18 U.S.C. § 1962(c)]**

238.    The allegations of paragraphs 1  through 186  are hereby repeated and re-alleged as though fully set forth herein.

## <u>THE RICO ENTERPRISE</u>

239.    At all times relevant herein, Kissena Medical was an "enterprise" engaged in, or the activities of which affect, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

240.    From in or about 2002, through the date of the filing of this Complaint, Defendants Devineni Ratnam, Lawrence Diamond, M.D., Holly, Inc. LLC, John Does 1 through 20 and ABC Corporations 1 through 20 knowingly conducted and participated in the affairs of the Kissena Medical Enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein, in the representative list of predicate acts set forth in the accompanying Appendix, which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

241.    At all relevant times mentioned herein, Defendant Ratnam was the principal of, exerted control over, and directed the operations of the Kissena Medical Enterprise. Defendant Ratnam utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs.

242.    At all relevant times mentioned herein, Defendant Diamond was employed by or associated with the Kissena Medical Enterprise and participated in the conduct of its affairs

through a pattern of racketeering activity. In addition, Defendant Diamond furnished his name and professional license to the Kissena Medical Enterprise and provided the essential means for the Enterprise to fraudulently incorporate a bogus professional service corporation and fraudulently bill insurance companies.

243.   On information and belief, one or more of John Does 1 through 20 were associated with the Kissena Medical Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.

244.   On information and belief, Holly, Inc. participated in and conducted the affairs of the Kissena Medical Enterprise, including concealing Defendants' scheme to defraud and money laundering activities.

245.   On information and belief, one or more of the ABC Corporations were associated with the Kissena Medical Enterprise and participated in the conduct of its affairs through a pattern of racketeering activity.

## THE PATTERN OF RACKETEERING ACTIVITY

### (RACKETEERING ACTS)

246.   The racketeering acts set forth herein were carried out over a twelve year period, were related and similar, and were committed as part of Defendants' scheme to use their control of Kissena Medical to defraud insurers and if not stopped will continue into the future.

247.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Kissena Medical continues to pursue collection on the fraudulent bills to the present day.

248.   As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Defendants caused mailings to be made

through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Allstate and to induce Allstate to issue checks to the Kissena Medical Enterprise based upon materially false and misleading information.

249.    Through the Kissena Medical Enterprise, Defendants submitted or caused to be submitted thousands of fraudulent claim forms seeking payment for Diagnostic Testing provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Kissena Medical Enterprise through the filing of this complaint.

250.    A sample list of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

251.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

252.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## THE DAMAGES

253.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate has been injured in its business and property and Allstate has been damaged in the aggregate amount presently in excess of $3,200,000.00, the exact amount to be determined at trial.

254.    Pursuant to 18 U.S.C. § 1964(c), Allstate is entitled to recover from Defendants Devineni Ratnam, Lawrence Diamond, M.D., Holly, Inc. LLC, John Does 1 through 20 and ABC Corporations 1 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### FIFTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS DIMITRY TVILIDIANI, AIM 4 LIFE MEDICAL DIAGNOSTICS, PC, ADVANCED MEDICAL DIAGNOSTICS OF QUEENS, PC, SPRINGFIELD RADIOLOGY IMAGING, PC, NORADI MIKHELASHVILI, M.D., AYOOB KHODADADI, M.D. MEDEQ INT'L, LLC., IMAGE PRO,LLC, IBERIA MANAGEMENT, LLC, JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20

### (Common Law Fraud)
### (Fraudulent Incorporation of the Defendant PCs)

255.    The allegations of paragraphs 1 through 186 are hereby repeated and re-alleged as though fully set forth herein.

256.    Defendants Dimitry Tvildiani, Aim 4 Life Medical, Advanced Medical, Springfield Radiology, Noradi Mikhelashvili, M.D., Ayoob Khodadadi, M.D. Medeq Int'l, Image Pro and Iberia Management, John Does 1 through 20 and ABC Corporations 1 through 20 intentionally, knowingly, fraudulently, and with an intent to deceive Plaintiffs, made various misleading statements intended to hold out Aim 4 Life Medical, Advanced Medical and Springfield Radiology as legal professional service corporations in compliance with core licensing requirements when in fact they were not, thereby inducing Plaintiffs to make payments that Defendants were not entitled to because of their fraudulent incorporation, illegal fee-splitting and/or illegal corporate structure that rendered Aim 4 Life Medical, Advanced Medical and Springfield Radiology not licensed in accordance with applicable New York State Law.

257.    As part of the fraudulent scheme implemented by Defendant Tvildiani,

Defendants Aim 4 Life Medical, Advanced Medical, Springfield Radiology, Mikhelashvili and Khodadadi, with the assistance and knowledge of Defendants Tvildiani, Medeq Int'l, Image Pro and Iberia Management, made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs for payment.

258.    Defendants Dimitry Tvildiani, Aim 4 Life Medical, Advanced Medical, Springfield Radiology, Noradi Mikhelashvili, M.D., Ayoob Khodadadi, M.D. Medeq Int'l, Image Pro and Iberia Management, John Does 1 through 20 and ABC Corporations 1 through 20, intentionally, knowingly, fraudulently, and with an intent to deceive Plaintiffs, concealed the fact that Defendant Tvildiani, not Defendant Mikhelashvili, was the true owner of Aim 4 Life Medical, Advanced Medical, and that Defendant Tvildiani, not Defendant Khodadadi, was the true owner of Springfield Radiology, and that those Defendant PCs were engaged in unlawful fee-splitting, by making false representations of material facts, including, but not limited to, the following fraudulent misrepresentations:

> a.    Each and every bill and report submitted to Allstate by Aim 4 Life Medical and Advanced Medical misrepresented that they were professional corporations owned by Defendant Mikhelashvili, a medical doctor, when, in fact, they were not; and each and every bill and report submitted to Allstate by Springfield Radiology misrepresented that it was a professional corporations owned by Defendant Khodadadi, when, in fact it, was not. The submission of bills and reports containing the signatures of Defendants Mikhelashvili and Khodadadi was a fraudulent misrepresentation, intended to deceive and mislead the Plaintiffs into believing that Aim 4 Life Medical, Advanced Medical and/or Springfield Radiology were legal professional corporations when, in fact, they were not;

> b.    False and misleading statements and information regarding who owned, controlled and operated Aim 4 Life Medical, Advanced Medical and/or Springfield Radiology;

> c.    False and misleading statements and information intended to mislead Plaintiffs into believing that Aim 4 Life Medical, Advanced Medical and Springfield Radiology were being operated by Defendants Mikhelashvili and Khodadadi, as indicated in their respective

certificates of incorporation when, in fact, they were not;

d.  False and misleading statements intended to mislead Plaintiffs that Aim 4 Life Medical, Advanced Medical and Springfield Radiology were licensed in accordance with applicable New York State Law when, in fact, they were not;

e.  False and misleading statements that Aim 4 Life Medical, Advanced Medical and Springfield Radiology were properly licensed and therefore eligible to recover No-fault benefits pursuant to Insurance Law 5102(a)(1) and 11 NYCRR 65-3.16(a) (12) when, in fact, they were not;

f.  False and misleading statements and information intended to circumvent Article 15 of the New York State Business Corporation Law, which prohibits ownership by individuals not licensed to practice the profession for which a professional corporation was incorporated;

g.  False and misleading statements and information, as contained in the signed medical reports and NYS N-F3s, that were intended to deceive and conceal the fact that Aim 4 Life Medical, Advanced Medical and Springfield Radiology were engaged in the illegal corporate practice of medicine in contravention of New York State law, and that Tvildiani, a non-physician and/or others unknown to Allstate, were billing for physician services through fraudulently incorporated PCs;

h.  False and misleading statements and information set forth in NYS N-F3 forms and medical reports indicating that Defendants Mikhelashvili and Khodadadi were actively involved in the operations of Aim 4 Life Medical, Advanced Medical and/or Springfield Radiology, when, in fact, they were not; and

i.  False and misleading statements contained in each separate bill, medical record and report submitted by Defendants Dimitry Tvildiani, Aim 4 Life Medical, Advanced Medical, Springfield Radiology, Noradi Mikhelashvili, M.D., Ayoob Khodadadi, M.D. Medeq Int'l, Image Pro and Iberia Management, John Does 1 through 20 and ABC Corporations 1 through 20 to Plaintiffs regarding the relationship between: Medeq Int'l, Image Pro and Iberia Management, and Aim 4 Life Medical, Advanced Medical and/or Springfield Radiology; Aim 4 Life Medical, Advanced Medical and/or Springfield Radiology, and Defendants Mikhelashvili and Khodadadi; Defendants Mikhelashvili and Khodadadi and Tvildiani; and Aim 4 Life Medical, Advanced Medical and Springfield Radiology and Mikhelashvili and Khodadadi, all of which concealed or failed to disclose the actual relationship between said parties and the existence of a fraudulent corporate structure and improper fee-splitting arrangement.

259.    Defendants Dimitry Tvildiani, Aim 4 Life Medical, Advanced Medical, Springfield Radiology, Noradi Mikhelashvili, M.D., Ayoob Khodadadi, M.D. Medeq Int'l, Image Pro and Iberia Management, John Does 1 through 20 and ABC Corporations 1 through 20 knew the foregoing material misrepresentations to be false when made, particularly that Aim 4 Life Medical, Advanced Medical and/or Springfield Radiology were properly licensed in accordance with New York State Law and eligible to recover No-fault benefits, and made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

260.    Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and/or omissions and upon a state of facts that Plaintiffs were led to believe existed as a result of Defendants' acts of fraud and deception, and which led to Plaintiffs making substantial payments to Aim 4 Life Medical, Advanced Medical and Springfield Radiology.

261.    Had Plaintiffs known of Aim 4 Life Medical, Advanced Medical and Springfield Radiology's illegal corporate structure and fee-splitting, which were contrary to all indications reflected in the medical reports, treatment verifications, and bills for medical services and other documents they submitted in support of payment, Plaintiffs would not have paid Aim 4 Life Medical, Advanced Medical and/or Springfield Radiology's claims for No-fault insurance benefits submitted in connection therewith.

262.    Plaintiffs were thus injured as a proximate result and are entitled to recover and recoup from Dimitry Tvildiani, Aim 4 Life Medical, Advanced Medical, Springfield Radiology, Noradi Mikhelashvili, M.D., Ayoob Khodadadi, M.D. Medeq Int'l, Image Pro and Iberia Management, John Does 1 through 20 and ABC Corporations 1 through 20 payments they made to Aim 4 Life Medical, Advanced Medical and Springfield Radiology, in accordance with the Court of Appeals' decision in *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 827

N.E.2d 758, 794 N.Y.S.2d 700 (2005).

263.    Furthermore, Defendants Dimitry Tvildiani, Aim 4 Life Medical, Advanced Medical, Springfield Radiology, Noradi Mikhelashvili, M.D., Ayoob Khodadadi, M.D. Medeq Int'l, Image Pro and Iberia Management, John Does 1 through 20 and ABC Corporations 1 through 20s' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

264.    By reason of the foregoing, Plaintiffs have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $2,500,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

### SIXTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS DIMITRY RATNAM, LAWRENCE DIAMOND, M.D., KISENNA MEDICAL IMAGING, PC, HOLLY, INC., JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20

#### (Common Law Fraud)
#### (Fraudulent Incorporation of the Defendant PCs)

265.    The allegations of paragraphs 1 through 186 are hereby repeated and re-alleged as though fully set forth herein.

266.    Defendants Devineni Ratnam, Kissena Medical, Lawrence Diamond, M.D., Noradi Mikhelashvili, M.D., Ayoob Khodadadi, Holly, Inc., John Does 1 through 20 and ABC Corporations 1 through 20 intentionally, knowingly, fraudulently, and with an intent to deceive Plaintiffs, made various misleading statements intended to hold out Kissena Medical as a legal professional service corporations in compliance with core licensing requirements when in fact it was not, thereby inducing Plaintiffs to make payments that Kissena Medical was not entitled to

because of its fraudulent incorporation, illegal fee-splitting and/or illegal corporate structure that rendered Kissena Medical not licensed in accordance with applicable New York State Law.

267.   As part of the fraudulent scheme implemented by Defendant Ratnam, Defendants Kissena Medical and Diamond, with the assistance and knowledge of Defendants Ratnam and Holly, Inc., made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs for payment.

268.   Defendants Ratnam, Kissena Medical, Diamond, Holly, Inc. John Does 1 through 20 and ABC Corporations 1 through 20, intentionally, knowingly, fraudulently, and with an intent to deceive Plaintiffs, concealed the fact that Defendant Ratnam, not Defendant Diamond, was the true owner of Kissena Medical, and that Kissena Medical was engaged in unlawful fee-splitting, by making false representations of material facts, including, but not limited to, the following fraudulent misrepresentations:

    a.   Each and every bill and report submitted to Allstate by Kissena Medical misrepresented that it was a professional corporation owned by Defendant Diamond, a medical doctor, when, in fact, it was not. The submission of bills and reports containing the signature of Defendant Diamond was a fraudulent misrepresentation, intended to deceive and mislead the Plaintiffs into believing that Kissena Medical was a legal professional corporation when in fact, it was not;

    b.   False and misleading statements and information regarding who owned, controlled and operated Kissena Medical;

    c.   False and misleading statements and information intended to mislead Plaintiffs into believing that Kissena Medical was being operated by Defendant Diamond, as indicated in its certificates of incorporation when, in fact, it was not;

    d.   False and misleading statements intended to mislead Plaintiffs that Kissena Medical was licensed in accordance with applicable New York State Law when, in fact, it was not;

    e.   False and misleading statements that that Kissena Medical was properly licensed and therefore eligible to recover No-fault benefits pursuant to Insurance Law 5102(a)(1) and 11 NYCRR 65-3.16(a) (12) when, in fact, it

was not;

f.  False and misleading statements and information intended to circumvent Article 15 of the New York State Business Corporation Law, which prohibits ownership by individuals not licensed to practice the profession for which a professional corporation was incorporated;

g.  False and misleading statements and information, as contained in the signed medical reports and NYS N-F3s, that were intended to deceive and conceal the fact that that Kissena Medical was engaged in the illegal corporate practice of medicine in contravention of New York State law, and that Ratnam, a non-physician and/or others unknown to Allstate, were billing for physician services through a fraudulently incorporated PC;

h.  False and misleading statements and information set forth in NYS N-F3 forms and medical reports indicating that Defendant Diamond was actively involved in the operation of Kissena Medical, when, in fact, he was not; and

i.  False and misleading statements contained in each separate bill, medical record and report submitted by Defendants Ratnam, Kissena Medical, Lawrence Diamond, M.D., Holly Inc., John Does 1 through 20 and ABC Corporations 1 through 20 to Plaintiffs regarding the relationship between: Holly, Inc. and Kissena Medical; Kissena Medical and Defendant Diamond; Defendant Ratnam and Diamond; and Kissena Medical and Diamond, all of which concealed or failed to disclose the actual relationship between said parties and the existence of a fraudulent corporate structure and improper fee-splitting arrangement.

269.  Defendants Ratnam, Kissena Medical, Diamond, Holly, Inc. John Does 1 through 20 and ABC Corporations 1 through 20 knew the foregoing material misrepresentations to be false when made, particularly that Kissena Medical was properly licensed in accordance with New York State Law and eligible to recover No-fault benefits, and made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

270.  Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and/or omissions and upon a state of facts that Plaintiffs were led to believe existed as a result of Defendants Ratnam, Kissena Medical, Diamond, Holly, Inc. John Does 1 through 20 and ABC Corporations 1 through 20s' acts of fraud and deception, and which led to Plaintiffs making substantial payments to Kissena Medical.

271.    Had Plaintiffs known of Kissena Medical's illegal corporate structure and fee-splitting, which were contrary to all indications reflected in the medical reports, treatment verifications, and bills for medical services and other documents they submitted in support of payment, Plaintiffs would not have paid Kissena Medical's claims for No-fault insurance benefits submitted in connection therewith.

272.    Plaintiffs were thus injured as a proximate result and are entitled to recover and recoup from Defendants Ratnam, Kissena Medical, Diamond, Holly, Inc. John Does 1 through 20 and ABC Corporations 1 through 20 payments they made to Kissena Medical, in accordance with the Court of Appeals' decision in *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 827 N.E.2d 758, 794 N.Y.S.2d 700 (2005).

273.    Furthermore, Defendants Ratnam, Kissena Medical, Diamond, Holly, Inc. John Does 1 through 20 and ABC Corporations 1 through 20s' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

274.    By reason of the foregoing, Plaintiffs have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $3,200,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SEVENTH CLAIM FOR RELIEF

## <u>AGAINST ALL DEFENDANTS</u>
### (Unjust Enrichment)
### (Fraudulent Incorporation of the Defendant PCs

275.    The allegations of paragraphs 1  through 186  are hereby repeated and re-alleged

as though fully set forth herein.

276.    In accordance with the Defendant Doctors' transfer of ownership and control, and in contravention of Sections 1503, 1504(a) and (c) and 1508 of the BCL and Article 130 of the Education Law, the Controllers and/or others unknown to Plaintiffs exercised ownership and control over all aspects of the Defendant PCs, and the Defendant PCs engaged in unlawful fee-splitting.

277.    Pursuant to the Department of Financial Services Regulations, 11 NYCRR 65-3.16(a)(12), "A provider of health care services is not eligible for reimbursement under section 5102(a)(1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York."

278.    By reason of their wrongdoing, Defendants have been unjustly enriched, in that they have, directly and/or indirectly, received substantial moneys from Plaintiffs that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

279.    In accordance with the Court of Appeals' decision in *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 827 N.E.2d 758, 794 N.Y.S.2d 700 (2005), Plaintiffs are entitled to recover restitution for that amount that the Defendant PCs and the Controllers were unjustly enriched as a result of payments made by Plaintiffs to said Defendants after April 4, 2002.

280.    By reason of the foregoing, Plaintiffs have sustained compensatory damages and have been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $5,700,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## EIGHTH CLAIM FOR RELIEF

### AGAINST KISSENA MEDICAL IMAGING PC, ADVANCED MEDICAL DIAGNOSTICS, PC AND SPRINGFIELD RADIOLOGY IMAGING, PC
(Declaratory Judgment)
(Corporate Practice Of Medicine
Business Corporation Law §§ 1501, *et seq.*)

281.    The allegations of paragraphs 1  through 186  are hereby repeated and re-alleged as though fully set forth herein.

282.    As set forth herein, the Controllers have used the name and license of Defendants Mikhelashvili, Khodadadi and Diamond to circumvent the strict tenets of Article 15 of the Business Corporation Law and fraudulently incorporate Kissena Medical Imaging, PC, Advanced Medical Diagnostics, PC and Springfield Radiology Imaging, PC, and submit bills to insurers thereunder.

283.    Under New York law, a professional corporation is not eligible to recover No-fault benefits if it is not licensed in accordance with applicable New York State Law and any such entity does not have standing to seek reimbursement under the No-fault Law. As a matter of eligibility and standing, the New York Court of Appeals held in *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 827 N.E.2d 758, 794 N.Y.S.2d 700 (2005), that a fraudulently incorporated and/or professional corporation not licensed in accordance with New York State Law, such as Kissena Medical Imaging, PC, Advanced Medical Diagnostics, PC and Springfield Radiology Imaging, PC, not formed and/or operated in accordance with Article 15 of the Business Corporation Law, is not entitled to recover No-fault benefits.

284.    As Kissena Medical Imaging, PC, Advanced Medical Diagnostics, PC and Springfield Radiology Imaging, PC are fraudulently incorporated and/or are not licensed and/or operated in accordance with applicable New York State Law, with nominal owners listed on the

certificates of incorporation filed with the Department of State, concealing the true owners, it is respectfully requested that this Court issue an order declaring that Plaintiffs are under no obligation to pay any of Kissena Medical Imaging, PC, Advanced Medical Diagnostics, PC and Springfield Radiology Imaging, PC's No-fault claims because Kissena Medical Imaging, PC, Advanced Medical Diagnostics, PC and Springfield Radiology Imaging, PC are not properly licensed in accordance with New York State Law.

285.    As Kissena Medical Imaging, PC, Advanced Medical Diagnostics, PC and Springfield Radiology Imaging, PC are fraudulently incorporated and/or fraudulently licensed and/or operated, with nominal owners listed on the certificates of incorporation filed with the Department of State, concealing the true beneficial owners, it is respectfully requested that this Court issue an order declaring that Kissena Medical Imaging, PC, Advanced Medical Diagnostics, PC and Springfield Radiology Imaging, PC are ineligible to recover benefits under the New York State No-fault law and Plaintiffs, therefore, are under no obligation to pay any of Defendants' No-fault claims because of Kissena Medical Imaging, PC, Advanced Medical Diagnostics, PC and Springfield Radiology Imaging, PC's illegal corporate structure.

286.    A justiciable controversy exists between Plaintiffs and Kissena Medical Imaging, PC, Advanced Medical Diagnostics, PC and Springfield Radiology Imaging, PC since Kissena Medical Imaging, PC, Advanced Medical Diagnostics, PC and Springfield Radiology Imaging, PC challenge Plaintiffs' ability to deny such claims.

287.    Plaintiffs have no adequate remedy at law.

288.    Kissena Medical Imaging, PC, Advanced Medical Diagnostics, PC and Springfield Radiology Imaging, PC will continue to bill Plaintiffs for No-fault services despite their illegal corporate form and fraudulent incorporation absent a declaration by this Court that

their activities are unlawful and that Plaintiffs have no obligation to pay the pending, previously-denied and/or submitted unpaid claims, regardless of whether such unpaid claims were ever denied and any future No-fault claims submitted by Kissena Medical Imaging, PC, Advanced Medical Diagnostics, PC and Springfield Radiology Imaging, PC due to their fraudulent incorporation and operation.

**NINTH CLAIM FOR RELIEF**

**AGAINST KISSENA MEDICAL IMAGING PC, ADVANCED MEDICAL
DIAGNOSTICS, PC AND SPRINGFIELD RADIOLOGY IMAGING, PC**
**(Declaratory Judgment)**
**(Unlawful Fee Splitting)**

289.    The allegations of paragraphs 1 through 186 are hereby repeated and re-alleged as though fully set forth herein.

290.    In order to be eligible to receive No-fault benefits, a provider must adhere to all applicable New York statutes, which grant the authority to provide health services in New York State.

291.    Pursuant to Sections 6509-a, 6530 and 6531 of the Education Law and 8 NYCRR § 29.1, a professional licensed, certified, or registered pursuant to Title VIII of the Education Law is prohibited from permitting any person to share in the fees for professional services, other than a partner, employee, associate in a professional firm or corporation, professional subcontractor or consultant authorized to practice the same profession, or a legally authorized trainee practicing under the supervision of a licensed practitioner.

292.    On information and belief, Mikhelashvili, Khodadadi, Advanced Medical and Springfield Radiology engaged in unlawful fee splitting with Defendants Tvildiani, Medeq Int'l, Image Pro and Iberia Management, one or more of the ABC Corporations and/or other corporate entities substantially owned and/or controlled by Defendant Tvildiani; and Diamond and Kissena

Medical engaged in unlawful fee splitting with Defendants Ratnam, Holly, Inc., one or more of the ABC Corporations and/or other corporate entities substantially owned and/or controlled by Defendant Ratnam.

293.    In view of the unlawful fee-splitting activities in violation of Sections 6509-a, 6530 and 6531 of New York's Education Law, and 8 NYCRR § 29.1, Advanced Medical, Springfield Radiology and Kissena Medical do not have standing to submit or receive assigned No-fault benefits, let alone recover No-fault benefits under New York State Law. *See Necula v. Glass*, 231 A.D.2d 457, 647 N.Y.S.2d 501 (1st Dep't 1996).

294.    Advanced Medical, Springfield Radiology and Kissena Medical continue to engage in unlawful fee-splitting. The Defendant PCs continue to challenge prior claim denials.

295.    A justiciable controversy exists between Plaintiffs and Advanced Medical, Springfield Radiology and Kissena Medical since Advanced Medical, Springfield Radiology and Kissena Medical challenge Plaintiffs' ability to deny such claims.

296.    Plaintiffs have no adequate remedy at law.

297.    Advanced Medical, Springfield Radiology and Kissena Medical will continue to bill Plaintiffs for No-fault services and continue to engage in fee-splitting absent a declaration by this Court that their activities are unlawful and that Plaintiffs have no obligation to pay the pending, previously-denied and any future No-fault claims submitted by Advanced Medical, Springfield Radiology and Kissena Medical while they were engaged in unlawful fee-splitting.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE,** Plaintiffs demands judgment as follows:

1.    Compensatory damages in an amount in excess of $5,700,000.00, the exact

amount to be determined at trial, together with prejudgment interest;

      2.      Punitive damages in such amount as the Court deems just;

      3.      Treble damages, costs and reasonable attorneys' fees on the First, Second, Third and Fourth Claims for Relief;

      4.      Compensatory and punitive damages on the Fifth and Sixth Claims for Relief, together with prejudgment interest;

      5.      Declaratory relief on the Seventh Claim for Relief declaring that Plaintiffs are under no obligation to pay any of the Defendant PCs' No-fault claims because of their illegal corporate structure;

      6.      Declaratory relief on the Eighth and Ninth Claims for Relief declaring that Plaintiffs are under no obligation to pay any of Advanced Medical, Springfield Radiology and Kissena Medical's  No-fault claims because they engaged in unlawful fee-splitting;  and

      7.      Costs, reasonable attorneys' fees and such other relief that the Court deems just and proper.

Dated: New York, New York
        December 17, 2014

                  STERN & MONTANA LLP

                  By:_____
                    Robert A. Stern (RAS-1282)
                    Sandra P. Burgos (SB-6856)
                    Daniel S. Marvin (DM-7106)

                  Attorneys for Plaintiffs
                  Office and Post Office Address:
                  Trinity Centre
                  115 Broadway
                  New York, New York  10006
                  Telephone No.:  (212) 532-8100

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- X

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY AND ALLSTATE PROPERTY& CASUALTY INSURANCE COMPANY | ) ) ) | CIVIL ACTION NO:_____ |

                                        )
                    PLAINTIFFS,          )
                                        )
            -AGAINST-                    )        COMPLAINT
                                        )
DIMITRY TVILDIANI, DEVINENI RATNAM, AIM 4 LIFE      )
MEDICAL DIAGNOSTICS, PC, ADVANCED MEDICAL          )        (TRIAL BY
DIAGNOSTICS OF QUEENS, PC, SPRINGFIELD RADIOLOGY    )          JURY
IMAGING, PC, KISSENA MEDICAL IMAGING, PC, LAWRENCE  )        DEMANDED)
DIAMOND, M.D., NORADI MIKHELASHVILI, M.D., AYOOB    )
KHODADADI, M.D. MEDEQ INTERNATIONAL, LLC, IMAGE PRO,)
LLC, IBERIA MANAGEMENT, LLC, HOLLY, INC., JOHN DOES 1)
THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20,       )
                                        )
                    DEFENDANTS.          )

-------------------------------------------------------------------------- X

---

## COMPLAINT

---

### STERN & MONTANA, LLP
**ATTORNEYS FOR PLAINTIFFS**
**TRINITY CENTRE**
**115 BROADWAY**
**NEW YORK, NEW YORK 10006**
**TELEPHONE: (212) 532-8100**